RIZZEN, Appellee and Cross–Appellant,

v.

SPAMAN, Appellant and Cross–Appellee.*

[Cite as *Rizzen v. Spaman* (1995), 106 Ohio App.3d 95.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–201.

Decided Aug. 25, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1509, 659 N.E.2d 1286.

96

*Martin J. Holmes* and *Richard L. Emery,* for appellee and cross-appellant.
*Robert A. Woodley,* for appellant and cross-appellee.

GLASSER, Judge.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.

The relevant facts of this case are as follows. On February 18, 1982, plaintiff-appellee and cross-appellant ("appellee"), Carol Sue Rizzen, f.k.a. Spaman, was granted a divorce from defendant-appellant and cross-appellee ("appellant"), William C. Spaman. The trial court's judgment entry provided in pertinent part:

"It is further ORDERED, ADJUDGED and DECREED, that defendant shall transfer his interest in the real property of the parties located at 2832 Sherbrooke, Toledo, Ohio to plaintiff by Quit–Claim Deed and further that defendant shall pay and hold plaintiff harmless on the balance of the mortgage on said real property at First Federal Savings and Loan Association in the approximate balance of Fourteen thousand five hundred dollars ($14,500.00). The plaintiff shall pay and hold defendant harmless as to taxes, assessments, insurance and maintenance on said real property.

" * * *

"It is further ORDERED, ADJUDGED and DECREED, that defendant shall pay to plaintiff as and for lump sum alimony Two hundred thousand dollars ($200,000.00) as payment in full settlement of all claims, receipt of which plaintiff hereby acknowledges.

" * * *

"It is further ORDERED, ADJUDGED and DECREED, that defendant shall pay the sum of $75.00 per week plus poundage through the Lucas County Bureau of Support beginning forthwith, as and for child support for Kimberly, until such time as she is eighteen years old and graduated from high school unless otherwise emancipated sooner. In addition thereto, defendant shall pay all medical, dental, optical, hospital, and surgical expenses on behalf of the minor child and defendant shall pay the tuition for Kimberly at Central Catholic High School.

" * * *

"It is further ORDERED, ADJUDGED and DECREED, that the defendant shall provide plaintiff and the minor child, Kimberly, with an Aetna Medical Insurance Plan and defendant shall pay all premiums thereon until plaintiff's death or remarriage, whichever occurs first, and as to Kimberly until emancipated and any reimbursed medical bills from Aetna Insurance, shall be paid to the defendant.

"It is further ORDERED, ADJUDGED and DECREED, that plaintiff shall sign the 1980 and 1981 joint tax returns as soon as they are prepared and any refunds on said returns shall be the exclusive property of defendant. In the event of any tax liability on behalf of these parties, defendant agrees to hold plaintiff harmless thereon.

"It is further ORDERED, ADJUDGED and DECREED, that defendant is to pay all the existing bills of the marriage, and it is acknowledged by both defendant and plaintiff that all bills of the marriage have been paid in full prior to this date."

Subsequently, appellant moved to Texas and, on March 14, 1983, filed a petition in bankruptcy under Chapter 7, Title 11, U.S.Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. As part of the bankruptcy proceedings, appellee was listed as an unsecured creditor without priority. The amount of her claim, however, was listed as undetermined. Thereafter, on March 21, 1984, appellant was discharged from all dischargeable debts by order of the bankruptcy court.

Subsequently, appellant fell behind on the payments he was ordered to make under the divorce decree, and on August 12, 1986, the trial court filed a judgment entry in which the court ordered in part:

"1. A lump sum judgment is granted against the Defendant, William C. Spaman in the amount of $17,470.71, representing child support arrears as of May 28, 1986; unpaid medical expenses for the minor child; and unpaid school expenses of the minor child.

" * * *

"5. A lump sum judgment is awarded Plaintiff, Carol Sue Spaman, against Defendant, William C. Spaman in the amount of $52,007.72 representing unpaid mortgage payments ($7,590.00 total); tax liens from the City of Toledo and the State of Ohio ($9,444.867 [sic] total); unpaid medical expenses incurred by Plaintiff Carol Sue Spaman ($34,972.85 total)."

Thereafter, on October 17, 1991, appellee filed in the trial court a motion to show cause, for lump sum judgment, attorney fees and costs. In relevant part she alleged (1) that since July 1986, appellant had willfully failed to pay the mortgage payments with the exception of a payment of $1,551.48 on August 23, 1991; (2) that from August 1986 through January 23, 1988, the date of her remarriage, she accumulated medical expenses and medical insurance expenses for which appellant is responsible and which he has failed to pay; (3) that appellant failed to pay his tax obligation for 1980 and 1981 and as a result appellee has incurred legal expenses in the amount of $18,216.16; and (4) that appellant failed to pay the lump sum judgments granted to appellee on August 12, 1986, weekly child support, and attorney fees. In response, appellant filed a motion for a continuance of the domestic court proceedings. Appellant asserted that he had filed a motion in the Texas bankruptcy court to reopen his case and that he had filed in that action a motion to show cause why appellee should not be held in contempt for violating the discharge order. The trial court granted the continuance pending the proceedings in the bankruptcy court. Subsequently, the bankruptcy court directed the parties to bring an action in domestic relations court to determine the dischargeability of the debts created under prior domestic court orders. Accordingly, on February 6, 1992, appellee filed a motion for declaratory judgment in the trial court, asking that court to declare that the

underlying obligations for which the August 12, 1986 judgment was granted were for the maintenance and support of appellee and the minor child and that those obligations were nondischargeable in bankruptcy.

A hearing was held before a court appointed referee. Subsequently, on December 2, 1993, the referee filed a report, including findings of fact and conclusions of law. Based on its findings of fact, the referee concluded that the orders covering appellee's medical insurance and Kimberly's medical and school expenses were for support and therefore were not dischargeable in bankruptcy and that the mortgage payment order and the order to pay the tax liability resulting from the 1980 and 1981 joint tax returns were not for support and thus were dischargeable in bankruptcy. Accordingly, the court concluded that appellee was entitled to enforcement of her 1986 judgment for medical expenses and for Kimberly's medical and school expenses and appellee was entitled to a lump sum judgment for her own medical insurance expenses from August 12, 1986 to January 23, 1988. The court then found the total amount of the nondischargeable debts owed to appellee was $37,239.33, that appellant was entitled to a credit of $2,049.99 for overpayment of child support, and awarded appellee partial attorney fees of $2,500, for a total lump sum judgment of $37,689.34.

Both parties filed objections to the referee's report. Appellee argued that the report failed to provide her with statutory interest from August 12, 1986 as mandated by R.C. 1343.03. Appellant objected to the finding of the referee that admitted most of appellee's exhibits, and objected to the referee's recommendations which he asserted were based on this evidence. Specifically, he objected to the recommendations that he be ordered to pay appellee $1,506.75 representing her medical insurance costs between August 12, 1986 and January 23, 1988, that he be ordered to pay appellee partial attorney fees of $2,500, and that appellee be awarded a lump sum judgment of $37,689.34. On June 13, 1994, the trial court filed its decision and judgment entry finding appellant's objections not well taken. The court then ordered that the lump sum judgment awarded to appellee on August 12, 1986 be reduced to $31,632.60, that appellee was entitled to statutory interest of ten percent from that date, that the interest accrued as of February 17, 1994 equalled $26,040.56, that the interest would continue to accrue until the judgment was paid in full, and that the 1986 judgment in its reduced amount plus interest was a nondischargeable obligation on the part of appellant. The court further ordered that appellee be granted an additional lump sum judgment of $4,006.75 plus interest from December 2, 1993, representing her medical insurance payments since August 12, 1986, that such interest shall continue to accrue until the judgment is paid in full, and that said judgment plus interest is a nondischargeable obligation on the part of appellant. It is from this judgment that appellant appeals and appellee cross-appeals.

Appellant's assignments of error are as follows:

"First Assignment of Error: The trial court erred in admitting virtually all of appellee's exhibits over the objections of appellant.

"Second Assignment of Error: The trial court erred in ordering appellant to pay to appellee the amount of $1506.75, representing appellee's medical insurance costs between August 12, 1986, and January 23, 1988.

"Third Assignment of Error: The trial court erred in ordering appellant to pay to appellee as partial attorney fees for this action the sum of $2,500.00.

"Fourth Assignment of Error: The court erred in refusing to make an independent determination of the dischargeability of the alleged expenses which had resulted in the 1986 judgment, including alleged medical expenses of $34,-972.85, and alleged medical and school expenses for the minor child of $759.53.

"Fifth Assignment of Error: The trial court erred in failing to give appellant credit for the sum of $1551.48, which appellee collected from appellant pursuant to collection proceedings, on August 23, 1991.

"Sixth Assignment of Error: The trial court erred in awarding interest to the appellee."

Appellee raises two additional assignments of error:

"I. It was against the manifest weight of the evidence for the trial court to determine the defendant/appellant's mortgage and tax obligations to be dischargeable in bankruptcy.

"II. It was against the manifest weight of the evidence for the trial court to fail to award plaintiff/cross-appellant mortgage, tax, and attorney fees and other obligations incurred."

We will first address appellant's fourth assignment of error and the cross-assignments of error as they each challenge the trial court's determination of which obligations were dischargeable in bankruptcy. In particular, appellant contends that the court erred in concluding that the appellee's medical expenses and the medical and school expenses of the minor child were nondischargeable. Appellee contends that the court erred in holding that the mortgage and tax obligations were dischargeable and erred in failing to award her medical expenses incurred between August 12, 1986 and January 23, 1988.

 In the present case, appellant's bankruptcy was filed under Chapter 7 of the Bankruptcy Code. Section 727(b), Title 11, U.S.Code states that not all debts of the debtor are subject to discharge in bankruptcy. Section 523, Title 11, U.S.Code, specifies those debts which are excepted from discharge and reads in relevant part:

"(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt—

" * * *

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

" * * *

"(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]"

Accordingly, those debts that are actually in the nature of alimony, maintenance or support are not dischargeable in bankruptcy. In determining whether a specific obligation is actually in the nature of alimony, maintenance or support, state courts have concurrent jurisdiction with the bankruptcy courts. *Pearl v. Pearl* (1990), 69 Ohio App.3d 173, 177, 590 N.E.2d 315, 317. However, in determining whether a debt meets the standards of Section 523(a)(5), federal law controls, guided in part by state law. *Smith v. Smith* (1992), 81 Ohio App.3d 641, 643, 611 N.E.2d 987, 988–989.

Because appellant's bankruptcy was filed in the state of Texas, the issue has been raised as to which law applies, that of the Fifth Circuit or that of the Sixth Circuit. Both parties in their briefs contend that the law as set forth in *In re Calhoun* (C.A.6, 1983), 715 F.2d 1103, should control our disposition of this case. In *Calhoun*, the Sixth Circuit set forth a three-part test which the court must apply in determining whether an obligation imposed by a divorce decree is in the nature of alimony, maintenance or support. First, the court must determine "whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts." *Id.* at 1109. If the initial question is answered in the affirmative, the court must determine "whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." (Emphasis added.) *Id.* Finally, if the second question is also answered in the affirmative, the court must then "determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110.

Upon consideration of this issue, however, we are in agreement with the trial court that the law as set forth in *In re Nunnally* (C.A.5, 1975), 506 F.2d 1024, and

its progeny controls. In particular, we note that because appellant's bankruptcy was filed in Texas, that bankruptcy court would have applied *Nunnally* had it chosen to exercise its jurisdiction over this case. In addition, it is noteworthy that *Nunnally* and its progeny represent the growing majority view on the issue of how to determine whether an obligation is in the nature of alimony, maintenance or support. See *Forsdick v. Turgeon* (C.A.2, 1987), 812 F.2d 801; *In re Harrell* (C.A.11, 1985), 754 F.2d 902. Under the majority view, "the intention of the parties is the ultimate question." *In re Benich* (C.A.5, 1987), 811 F.2d 943, 945. This is the point at which state court law provides some guidance. In *Nunnally*, the bankruptcy and divorce proceedings were both filed in Texas. Accordingly, to determine the intent of the parties the federal court looked to those factors which the state court examined at the time of divorce to divide the separate and community property between the spouses. In Texas, those factors included " 'the disparity of the *earning power* of the parties, as well as their business opportunities, * * * the physical condition of the parties, probable *future need for support*, and educational background; * * * [t]he fault in breaking up the marriage and the benefits [the] innocent spouse would have received from a *continuation* of the marriage * * *.' " (Emphasis added.) *Id.* at 1026, quoting *Cooper v. Cooper* (Tex.Civ.App.1974), 513 S.W.2d 229, 233–234.

However, "[t]hese are not legal criteria * * * but relevant evidentiary factors that assist the * * * court as trier of fact in determining the true nature of the debt created by the agreement." *Benich, supra,* 811 F.2d at 945. Finally, "[t]he burden is on the person who asserts nondischargeability of a debt to prove its exemption from discharge." *Id.*

Applying the *Nunnally* rationale to the present case, we find that in order to determine the true nature of the obligations created by the parties' divorce decree the trial court was required to examine those obligations in light of R.C. 3105.18. In 1982, the year of the parties' divorce, R.C. 3105.18(B) read:

"In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

Finally, because a trial court's determination as to whether a specific obligation is in the nature of alimony, maintenance or support affects the original property division, this court will only modify or reverse that determination upon a finding that the trial court abused its discretion. That is, unless we find that the trial court's determination involved an unreasonable, arbitrary or unconscionable attitude, we will not substitute our judgment for the trial court's. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

The trial court based its decision on the referee's findings of fact. The relevant findings can be summarized as follows.

At the time of the parties' divorce they had been married for twenty-two years, appellee was unemployed, had not been employed outside of the home during the marriage, and had no marketable skills. In addition, appellee had certain health problems which have required continuing treatment. Appellant's 1981 adjusted gross income was $247,793. His adjusted gross income for the years 1978, 1979 and 1980 was, respectively, $198,146, $276,252 and $382,223. Pursuant to the divorce decree, appellee received from appellant a payment of $200,000, characterized in the order as "lump-sum alimony." It was appellee's intent that the lump-sum payment would be used for some part of her living expenses, supplemented by appellant's payment of the mortgage and medical insurance premiums. There was no evidence as to appellant's intent regarding these payments.

The divorce decree further ordered appellant to maintain an Aetna medical insurance plan for appellee; however, this obligation was slated to terminate upon appellee's death or remarriage. In November 1982, while appellee was in the hospital for back surgery, appellant's new wife informed appellee that the Aetna medical insurance policy had lapsed. Thereafter, in May 1983, appellee purchased a medical insurance policy through Blue Cross/Blue Shield which she believed provided coverage comparable to that provided under the Aetna policy. Nevertheless, between the date of cancellation of the Aetna policy and the effective date of the Blue Cross/Blue Shield policy appellee incurred medical

expenses for which she obtained a judgment against appellant in August 1986. From August 12, 1986 to January 23, 1988, the date of appellee's remarriage, appellee incurred health insurance expenses of $1,506.75, medical expenses of $1,367.50 representing medical services not covered by insurance, and expenses of $2,128.11 representing unreimbursed hospital services.

As to the parties' child Kimberly, who was a minor at the time of the divorce, the referee found that the divorce decree ordered appellant to pay all medical expenses and tuition for her until she reached the age of eighteen and graduated from high school, that Kimberly reached the age of eighteen on November 27, 1984, and that medical and tuition expenses for Kimberly were included in the August 1986 judgment. Additionally, the referee found that the August 1986 judgment included an award of $9,444.86, representing city of Toledo and state of Ohio tax liens, plus an award of attorney fees incurred by appellee in obtaining the 1986 judgment. Finally, the referee found that the evidence supported an award of partial attorney fees in the amount of $2,500 incurred by appellee in the present action.

Based on these findings of fact, the trial court concluded from the previous orders that appellee's medical insurance expenses, plus the medical and school expenses of Kimberly, were nondischargeable and that appellant's obligation to pay the mortgage and tax obligations was dischargeable. In addition, the court concluded that appellee was entitled to enforcement of her 1986 judgment for medical expenses. In reaching these conclusions, the court first determined that the *amount* of the medical expenses had already been determined in the 1986 judgment and that appellant was, therefore, barred from relitigating that judgment. Thus, the only issue before the court was the dischargeability of the debt. In evaluating the intent of the parties, the court noted that appellee testified that she intended for appellant's payment of the mortgage and medical insurance to supplement the lump-sum alimony. While the disparity in the parties' income, education and health was a factor which the court expressly considered, the court noted that the conditions attached to the mortgage and health insurance obligations differed. The order to pay medical insurance extinguished upon appellee's death or remarriage while the order to pay the mortgage was not subject to appellee's death or remarriage, or tied to Kimberly's emancipation. In addition, the court noted that appellant had no remaining interest in the property which was the subject of the mortgage. Based on these factors, the court concluded that the order to pay appellee's medical insurance was clearly for support but that the mortgage obligation was part of the property settlement and not intended for support.

█ . Upon a review of the record before us, we cannot say that the trial court abused its discretion in regard to the medical insurance matter. We further find

no abuse of discretion in the trial court's determination that appellee's medical expenses incurred prior to the 1986 judgment were nondischargeable. Under the divorce decree appellant had an obligation to provide appellee with a health insurance policy. His failure to meet that obligation resulted in appellee's incurring over $30,000 in medical bills which were not covered by insurance. Under these circumstances, and given the factors listed in R.C. 3105.18(B), we conclude that the trial court was within its discretion in finding these medical expenses to be nondischargeable support. As such the trial court did not err in enforcing that part of the 1986 judgment.

■ With regard to the mortgage, however, we find that the trial court abused its discretion in finding that the obligation for such payments was in the nature of a property settlement. The mortgage payments were to assist appellee in meeting her financial obligations in support of herself and the minor child. That obligation was clearly in the nature of support and was therefore not dischargeable in bankruptcy.

■ As to the order that appellant pay any tax liability resulting from the parties' 1980 and 1981 tax returns, the court concluded that appellee had failed to show that the obligation was intended for support. In particular, the court noted that the obligation was not subject to any conditions affecting a determination of support and the amount had not been determined at the time of the divorce order. Upon review, we conclude that the record supports the trial court's finding that the order to pay taxes was in the nature of a property settlement. Accordingly, we find no abuse of discretion as to the trial court's disposition of the matter of the 1980 and 1981 income taxes.

■ Appellant further argues that the court erred in its treatment of the medical and school expenses of the minor child. While appellant does not contest that the obligations were for support, he does assert that the trial court was obligated to independently examine the bills which resulted in the 1986 judgment to determine if each of those bills was in the nature of support. We disagree. The only issue before the trial court was whether the obligations created under the previous judgments were in the nature of alimony, maintenance or support. The 1986 judgment ordered appellant to pay the medical and school expenses of Kimberly and determined the amount of those expenses. Although that judgment was obtained by default, appellant has admitted that he was properly served with notice of those proceedings. He did not, however, file an answer or in any way raise the affirmative defense of dischargeability in bankruptcy. In addition, appellant never moved to vacate that judgment or contest it in any way. The entry of default judgment through the August 1986 order was a final appealable order. See, generally, *Catanzarite & Co. v. Roof* (1983), 8 Ohio

App.3d 282, 8 OBR 376, 456 N.E.2d 1339; R.C. 2505.02. As stated in the case of *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180:

"It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or *might have been* litigated in a first lawsuit.' (Emphasis added.) *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388. '[W]here a party is called upon to make good his cause of action * * *, he must do so by all the proper means within his control, and if he fails in that respect * * *, he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties.' *Covington & Cincinnati Bridge Co. v. Sargent* (1875), 27 Ohio St. 233, paragraph one of the syllabus. The doctrine of *res judicata* 'encourages reliance on judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes.' *Brown v. Felsen* (1979), 442 U.S. 127, 131 [99 S.Ct. 2205, 2209, 60 L.Ed.2d 767, 771]. 'Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if * * * conclusiveness did not attend the judgments of such tribunals * * *.' *Southern Pacific Rd. Co. v. United States* (1897), 168 U.S. 1, 49 [18 S.Ct. 18, 27, 42 L.Ed. 355, 377]."

Accordingly, appellant cannot now contest the validity of the 1986 judgment or the amounts established by that judgment. The amount of the 1986 judgment attributable to Kimberly's medical and education expenses totalled $6,130.17. The referee below, in her conclusions of law, stated:

"The final items for which Plaintiff seeks [reimbursement are] medical and school expenses for the minor child and for Plaintiff's expenses incurred in enforcement of the Judgment Entry of Divorce. Defendant has not disputed that expenses for the minor child were for her support; his argument goes only to the amount, which has been determined in the 1986 judgment."

The court, however, then awarded appellee $759.73 for these expenses without an explanation as to why it reduced the award from $6,130.17. Neither party has contested this reduction. Moreover, appellant did testify, although inconsistently, that he has paid Kimberly's medical and school expenses. Given these factors, we cannot find that the lower court's award of $759.73 for Kimberly's medical and school expenses amounted to an abuse of discretion.

■ Finally, appellee contends that the trial court erred in failing to award her the amount of her medical expenses incurred between the August 1986 judgment and her remarriage in 1988. In particular, she asserts that it was unreasonable for the trial court to award and deem nondischargeable her medical expenses

incurred prior to the 1986 judgment, but only award her medical insurance expenses incurred after the 1986 judgment. Under the 1986 judgment, the trial court found:

"7. Defendant, William C. Spaman, has not paid medical insurance for Plaintiff, Carol Sue Spaman pursuant to prior Orders of this Court and that due to this non-payment, Plaintiff Carol Sue Spaman has incurred expenses totaling $34,-972.35."

Accordingly, the 1986 award of medical expenses was essentially a judgment for damages incurred by appellee due to appellant's failure to maintain appellee's medical insurance. It was not an order to pay all of appellee's uncovered medical expenses. That 1986 judgment was not challenged or appealed. Between August 12, 1986 and January 23, 1988, appellee maintained her own medical insurance policy. Under the terms of the original divorce decree, appellant is obligated to pay only appellee's medical insurance premiums, not any uncovered medical expenses. Therefore, the trial court did not err in failing to award appellee the amount of her uncovered medical expenses from the time of the 1986 judgment to the date of her remarriage.

Accordingly, appellant's fourth assignment of error is found not well taken and appellee's first and second assignments of error are well taken in part.

■ In his third assignment of error, appellant asserts that the trial court erred in ordering him to pay appellee $2,500 as partial attorney fees. It is well established that "[a] court's decision on a request for attorney fees will not be overruled absent an attitude that is unreasonable, arbitrary or unconscionable." *Dunbar v. Dunbar* (1994), 68 Ohio St.3d 369, 371, 627 N.E.2d 532, 534. Upon a review of the record in this case, we cannot say that the trial court's award of partial attorney fees amounted to an abuse of discretion. The third assignment of error is, therefore, not well taken.

In appellant's first assignment of error, he contends that the trial court erred in admitting virtually all of appellee's exhibits at the hearing below. Appellant asserts that the exhibits at issue constituted inadmissible hearsay, were not authenticated, and were not otherwise admissible under any exception to the hearsay rule. The exhibits at issue can be categorized as follows: medical bills, cancelled checks, a tax assessment, bills for attorney fees, receipts, and tax returns. With the exception of the bills and associated checks for attorney fees, we conclude that none of these exhibits were relevant to the issue of whether the obligations set forth in the original divorce decree, and reduced to a lump sum judgment of August 18, 1986, were for alimony, maintenance or support. The exhibits all go to the amount of the obligations. As we have stated, the amount of the obligations was determined in the judgment of August 1986. Because

appellant did not challenge that decision through a motion to vacate the judgment or through an appeal, that judgment is determinative on the issue of amount. While in the lower court proceedings the parties argued the relevancy of these exhibits in terms of the *Calhoun* test, that test is not applicable to this case.

As to the issue of legal fees, appellant contends that the trial court erred in admitting copies of attorney fee statements and copies of checks written by appellee and her husband to her attorneys as a means of establishing the amount of those fees. Appellant asserts that the checks and bills were inadmissible as hearsay and that they were not properly authenticated.

On the issue of authentication, Evid.R. 902(9) provides that commercial paper, signatures thereon, and documents relating thereto are self-authenticating. Accordingly, extrinsic evidence of their authenticity is not a condition precedent to their admissibility. As such the checks which are part of Plaintiff's Exhibit 16, and which indicate appellee's payment of attorney fees, were self-authenticating.

As to appellant's hearsay argument, hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C). At the proceedings below, appellant introduced into evidence copies of attorney bills and copies of checks written by appellee and her present husband to those attorneys. This evidence was not hearsay but rather documentary evidence that supported her testimony that she has spent over $50,000 on attorney fees in her efforts to collect the judgments awarded her. The first assignment of error is therefore not well taken.

In his second assignment of error, appellant asserts that the trial court erred in ordering him to pay the amount of $1,506.75, representing the cost of appellee's medical insurance premiums from August 12, 1986 to January 23, 1988. Appellant's argument under this assignment of error is disjointed; however, he seems to contend that the trial court was without authority to order him to pay this support obligation because the time period within which he was to perform the requested act expired upon appellee's remarriage. We are not persuaded by appellant's argument. The original divorce decree ordered appellant to pay appellee's medical insurance premiums until her death or remarriage. He did not do so. This order was for the support or maintenance of appellee. Simply because appellee has now remarried does not remove appellant's obligation to repay her for the support which he was obligated to maintain prior to her remarriage. The second assignment of error is therefore not well taken.

In his fifth assignment of error, appellant asserts that the trial court failed to give him credit for the sum of $1,551.48 which appellee collected from appellant on August 23, 1991. Appellee concedes that the trial court overlooked this payment and agrees to allow a $1,551.48 credit to appellant upon payment in

full of the judgment entered below. We believe the more appropriate remedy is to remand the case to the trial court for a redetermination of the judgment. We therefore find appellant's fifth assignment of error well taken.

Finally, in his sixth assignment of error, appellant contends that the trial court erred in awarding appellee interest on the 1986 judgment. Specifically, appellant asserts that the issue of statutory interest was never raised by appellee in any of the prejudgment proceedings and that even if appellee had pled statutory interest, there was no evidence from which the court could have calculated such interest.

R.C. 1343.03(A) reads in relevant part:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon * * * all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."

Under this statute, a party receiving a definite money judgment is entitled to interest at ten percent per year as a matter of law. There is no requirement that the party receiving the judgment request such interest. *Wilson v. Smith* (1993), 85 Ohio App.3d 78, 80, 619 N.E.2d 90, 90–91. This right is equally applicable to obligations arising out of a divorce decree. *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 23 O.O.3d 320, 432 N.E.2d 206, syllabus. Such obligations, however, must be reduced to a lump sum judgment before interest can be awarded. *Dunbar, supra.* In the present case, the lower court reduced the amount of the 1986 judgment pursuant to its determination of which parts of that judgment were dischargeable in bankruptcy, and then awarded appellee statutory interest of ten percent on that reduced judgment. Although the trial court did not explain its reason for reducing the lump sum judgment, we cannot find that the lack of such an explanation amounts to an abuse of discretion given that neither party has challenged that reduction. Upon remand, however, the trial court will need to redetermine the judgment for interest in light of the $1,551.48 credit due appellant and the judgment for unpaid mortgage payments due appellee. The sixth assignment of error is therefore well taken in part.

On consideration whereof, the court finds that substantial justice has not been done the parties complaining in regard to the trial court's finding that the mortgage payment obligation was dischargeable in bankruptcy and in the trial court's failure to credit appellant with the $1,551.48 payment. The judgment of the Lucas County Court of Common Pleas is reversed in that respect, and affirmed in all other respects. This cause is remanded for an entry of judgment

**112**

and a redetermination of interest consistent with this opinion. The parties are to pay their own costs of this appeal.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

ABOOD, P.J., and SHERCK, J., concur.