I respectfully concur in part and dissent in part.[1] I would affirm the judgment of the trial court in its entirety. The majority opinion contradicts established practice governing summary judgment on negotiable instruments under the Uniform Commercial Code, as well as opinions of this court, and other courts throughout Ohio. It then ignores Supreme Court Rules and existing authority of this court to reinstate dismissed claims for further proceedings, even though the trial court provided notice of the potential dismissal and already held the hearing the majority requires before dismissing them.
 Background
On November 15, 1994, defendant Petro signed a demand cognovit note in Cleveland in the principal amount of $10,000, with interest of 6% payable annually to the order of plaintiff Sweeney. By doing so Petro irrevocably consented in advance to Sweeney obtaining a judgment without notice or hearing. The entire purpose of such a confession of judgment provision is not to require the formality, expense, or delay involved in ordinary proceedings. Sweeney filed a complaint on the promissory note in the Cleveland Municipal Court and, nevertheless, served Petro. He attached a photocopy of the cognovit note as well as a copy of the check for the loan proceeds drawn on his personal out-of-town bank account.
Petro twice requested and was twice granted leave for additional time to file his pleadings. The municipal court's docket reflects that the case was twice scheduled for default proceedings because of Petro's failure to timely file an answer. Petro's final leave to plead expired on September 10, 1997. On September 15, 1997, without showing good cause or excusable neglect, Petro belatedly filed an answer, counterclaim and third-party complaint. Although Petro listed virtually all affirmative defenses set forth in Civ.R. 8, he never denied signing the demand cognovit promissory note attached to the complaint.
Petro's belated counterclaims and third-party claims were filed against Sweeney and his law firm, respectively.[2] Petro alleged that he was hired in a professional relationship as an attorney by Sweeney's law firm. Petro asserted that the "personal loan" constituted a payment or advance for professional services. Petro sought to recover additional damages and an accounting. During the proceedings, Petro twice filed motions to transfer the case from the municipal court to the common pleas court. The second motion raised the same grounds as the first motion after the first had already been denied. Sweeney and his law firm filed an answer denying the allegations in the counterclaim and third-party complaint and requested the municipal court to dismiss them.
For approximately the next year, the case was consumed with discovery and related disputes, with no proceedings on the merits or payments on the cognovit note. Petro sought extensive discovery of Sweeney's law firm files for a period of several years from August 1, 1992 through April 1995. Sweeney objected, arguing Petro was abusing the discovery process by seeking law firm documents protected by attorney-client privilege and work product doctrine which were not relevant to the pending claims. Sweeney also requested the trial court first rule on his pending request to dismiss Petro's claims. The trial court nevertheless ordered production of the requested information without limitation of any kind and without ruling on Sweeney's pretrial request to dismiss Petro's claims.[3]
Although each party made similar claims about his adversary, on at least one occasion Petro impeded Sweeney's discovery. At the last minute, on the eve of Petro's deposition, as Sweeney returned from out-of-town, Petro suddenly notified Sweeney that he was scheduled to undergo surgery and had to reschedule the deposition. The parties' depositions were rescheduled for approximately one week thereafter, after Petro completed his medical treatment.
Before the delayed depositions were conducted, more than one year after the action had been filed and approximately four years after no payment had been made on the note, Sweeney filed a motion for summary judgment, supported by an attached copy of the cognovit note and loan proceeds check. Sweeney argued that he was entitled to judgment in accordance with the documents as a matter of law.
Petro filed a two-page "motion in opposition to summary judgment." Petro's brief did not address the merits of the motion for summary judgment, but argued that the motion was not filed with leave of court, that the case had been scheduled for trial, that he had not yet deposed Sweeney, and that "copies of documents attached to his motion have not even been validated by anyone and are not of the evidentiary quality required by Rule 56 (E), O.R. Civ. P." (Id.
at pp. 1-2.)
The trial court scheduled the matter for hearing on all pending motions and, in the event that such hearing was not dispositive of the case, for trial. The trial court's orders scheduling the matter for trial specifically stated, "No continuances without compliance with M.C. Supp. Rule 16." Three weeks before one scheduled date, in compliance with Mun.Ct.Loc.R. 7.01 and M.C. Supp.R 16, Sweeney filed a written motion for continuance, stating that he had oral surgery scheduled for that time. He requested the matter be reset sometime during the week of October 19, 1998. The trial court granted the request, stating as follows:
 Plaintiff's Motion for Continuance is hereby granted. The matter is reset for a motion hearing and/or trial on the merits on October 22, 1998 at 1:00 p.m. The Court is also available on October 23, 1998 at 1:00 p.m. if necessary.
On the rescheduled date, approximately one and one-half years after the case was originally filed, Sweeney, his counsel, and Petro's counsel appeared, but Petro himself did not. At the outset of the hearing, the trial court called the case as follows:
 THE COURT: This matter is set for this date, August 20th. You selected this day.
PETRO'S COUNSEL: Yes, your Honor.
THE COURT: Is the plaintiff ready to proceed?
SWEENEY'S COUNSEL: Yes, your Honor.
THE COURT: And defense, do you want to make a statement?
* * *
 THE COURT: Now, Mr. Gerstenslager [Petro's counsel], is pleading without his client. And he has made several phone calls and he was anticipating that his client was going to be here.
 PETRO'S COUNSEL: No: Right, yes. There is always an anticipation on the attorneys, your Honor.
(Tr. 2, emphasis added.)
The parties thereafter orally argued the merits of the pending motion for summary judgment on the cognovit note. At the end of the discussion of the motion for summary judgment, in response to an inquiry by the trial judge, Petro's counsel conceded that his client signed the note. Following the hearing, the trial court announced that it was going to grant summary judgment for Sweeney on the cognovit promissory note.
After further discussion with Petro's counsel, the trial court also announced its intention to dismiss Petro's counterclaims and third-party claims with prejudice for failure by Petro or his counsel to prosecute them at the scheduled trial. Petro's counsel participated in the hearing without objections and took no further action of any kind. Eight days thereafter the trial court journalized an order granting summary judgment for Sweeney and dismissing Petro's claims.
 Summary Judgment
The majority reverses the trial court's grant of summary judgment on the grounds that plaintiff did not properly "authenticate" the evidence. (Ante at pp. 10-11.) It is not clear exactly what the majority believes should have been authenticated, but, regardless of how its argument is construed, the claim is unfounded. What makes the argument even more untenable is the fact that Petro does not even raise it in his brief on appeal.
The majority's argument ignores the Uniform Commercial Code, set forth in R.C. 1303.36 (A), which provides in pertinent part as follows:
Proof of signatures and status of holder in due course
 (A) Unless specifically denied in the pleadings, in an action with respect to an instrument, the authenticity of, and authority to make, each signature on an instrument is admitted. (Emphasis added.)
E.g., Dryden v. Dryden (1993), 86 Ohio App.3d 707, 711-712, citing this court's opinion in Bates Springer, Inc. v. Stallworth
(1978), 56 Ohio App.2d 223. Petro's answer did not specifically deny the authenticity of his signature on the note and loan proceeds check attached to the complaint in the case at bar.
Evid.R. 902 (9) further defeats any conceivable "authentication" argument. It specifically provides as follows:
Self-authentication
 Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 (9) Commercial paper and related documents
 Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.
E.g., Rizzen v. Spaman (1995), 106 Ohio App.3d 95, 110 (negotiable instruments are "self-authenticating").
Petro's counsel complained essentially that the original negotiable promissory note was not stapled to plaintiff's motion for summary judgment.[4] After conducting the oral hearing on the motion, the trial court held in its judgment entry as follows:
 Plaintiff [Sweeney] has presented the court with an original check in the amount of $10,000. made out to the defendant [Petro] along with an original note also signed by the defendant. Copies of these documents were substituted in the court files and stipulated to by counsel.
The transcript of proceedings fully supports these conclusions. (Tr. 15-16.) Predicating reversal on "authentication" grounds is without any basis, therefore, because there was never any dispute whatsoever concerning the authenticity of the documents and signatures. Petro's counsel specifically stipulated, twice, that defendant's signature appears on the note. [5]
Finally, even if the original documents had not been presented to the trial court and the trial court had not made these express findings, photocopies and other duplicates of original documents are admissible to the same extent as the originals unless there is a genuine question concerning authenticity of the originals. Evid.R. 1003.[6] Because there is no such issue in the case at bar, the trial court would not have abused its discretion by admitting into evidence the photocopies of the original. E.g., State v.Fricke (1984), 13 Ohio App.3d 331, 333 (holding the argument against admissibility of photocopy to be "feckless"); see also Foggv. Freisner (1988), 55 Ohio App.3d 139, 141 (photocopy of cognovit note).
The majority also ignores that by producing the note — in both original and duplicate — Sweeney made a prima facie case of liability on the note according to its terms. R.C. 1303.36 (B) provides in pertinent part:
 If the validity of signatures is admitted or proved and there is compliance with division (A) of this section, a plaintiff producing the instrument is entitled to payment * * * unless the defendant proves a defense or claim in recoupment.
E.g., Sur-Gro Plant Food Co., Inc. v. Morgan (1985), 29 Ohio App.3d 124,129; Ross v. Brown-Holcomb (Feb. 4, 1993), Cuyahoga App. No. 63277, unreported at p. 2. Petro never claimed or presented any evidence that he paid the note or other "defense or claim in recoupment" in response to the motion for summary judgment. Accordingly, the trial court properly entered summary judgment for Sweeney as a matter of law.
The Uniform Commercial Code and Evidence Rules were designed to avoid precisely the hurdles erected by the majority in this case. The entire purpose of summary judgment is "to terminate litigation and to avoid a formal trial where there is nothing to try." Norris v. Ohio Standard Oil Co. (1982), 70 Ohio St.2d 1, 2. Because the trial court made no error, its judgment for Sweeney on the note should be affirmed. Remanding the matter for further proceedings as the majority proposes makes no sense because the trial court would have to duplicate what it already did, namely, enter judgment for Sweeney on the note.
No error occurred and no conceivable claim of prejudice exists. The majority recognizes that the cognovit provision of the promissory note was valid in this case because there is no evidence the transaction was a "consumer loan" under R.C. 2323.13 (E). (Ante at 10.) Thus, judgment was warranted for Sweeney on the note without any of the elaborate adversary proceedings conducted in this case.[7] Moreover, at the hearing already held in the trial court, Petro's counsel merely requested that the court decide on the basis of a hearing rather than on summary judgment. (Tr. 13.) The transcript shows the trial court conducted a hearing as it would have in an ex parte trial after Petro failed to appear. Judgment for Sweeney on the note, therefore, was warranted on this basis as well. See Ohio Valley Radiology Associates, Inc. v. OhioValley Hosp. Ass'n (1986), 28 Ohio St.3d 118. For all these reasons, the judgment of the trial court in favor of Sweeney on the demand cognovit note should be affirmed.
 Dismissal
I also dissent from the majority's order reversing the dismissal of Petro's "claims." Notably, Petro's second assignment of error challenges only the dismissal of his "third party complaint" against the Sweeney law firm. By failing to object to the dismissal of his counterclaim against Sweeney individually, Petro waived any claim of error concerning it and the majority errs by sua sponte raising this unbriefed issue and reinstating the counterclaim.
This is an easy cases. The trial court bent over backwards to accommodate Petro throughout the proceedings, which lasted more than one and one-half years.[8] When judgment day finally arrived, Petro's counsel appeared at the trial — scheduled on the date Petro requested — without his client or an explanation for his absence, belatedly sought to reschedule, declined to prosecute or introduce Petro's deposition testimony in his absence, and discussed with the trial court the impending dismissal of his claims for failure to prosecute them.
Now, Petro contends, in two sentences of his brief, for the first time on appeal, that he did not get sufficient "notice" before the dismissal journalized eight days later. This belated argument lacks merit for both procedural and substantive reasons.
The Ohio Supreme Court recently declined to consider the adequacy of notice concerning a dismissal for failure to prosecute at trial when the complaining party did not raise the issue in the lower courts. Jones v. Hartranft (1997), 78 Ohio St.3d 368, 371 n. 2. Standard principles of waiver dictate that a party waives a claim of error concerning the adequacy of notice when counsel participates in a hearing on the issue without first raising an objection to the alleged lack of notice in the trial court. A party whose counsel attended a hearing and discussed an impending dismissal cannot validly claim for the first time on appeal, after an adverse decision, that notice of the impending dismissal was defective. By ignoring this waiver, the majority grants a civil litigant even greater protection than that afforded to a criminal defendant whose counsel is routinely found to waive errors and constitutional rights by failing to object during a hearing in a client's absence. E.g., State v. Carr (1995), 104 Ohio App.3d 699,703.
Even if Petro had not waived this claim of error concerning the adequacy of notice, however, it lacks merit. Civ.R. 41 (B) (1) provides as follows:
 Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to plaintiff's counsel, dismiss an action or claim. (Emphasis added.)
The trial court in the case at bar complied, literally, in all respects, with this rule by dismissing Petro's claims "after notice to plaintiff's counsel."
Rather than relying on the express terms of this rule, the majority obscures the issue by citing nine cases, only one of which is relevant. Four cases, Quonset Hut, Mindala, Perroti, andShoreway Circle, involve the dismissal of claims for violation of pre-trial orders, on motion papers without any oral hearings attended by counsel. Because there were no oral hearings, the question in each case was whether there was written notice to inform plaintiff's counsel of the impending dismissal. Quonset HutInc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46 summarizes this line of authority as follows:
 For purposes of Civ.R. 41 (B) (1). counsel has notice of an impending dismissal with prejudice for failure to comply with a discovery order when counsel has been informed that dismissal is a possibility and has a reasonable opportunity to defend against dismissal.
Id. at syllabus.
Four more cases, Logsdon, Carr, Weiler, and Potts, involved the failure by both a party and his counsel to appear for trial. As in the above cases, the trial court held no oral hearing. There was no discussion by the judge with plaintiff's counsel concerning the impending dismissal in any of these cases, because plaintiff's counsel did not appear for the scheduled trial. Again, because there was no oral hearing on the matter, the question in each case was whether there was written notice to inform plaintiff's counsel of the impending dismissal. Logsdon summarizes this line of authority as follows:
 [i]t is error for the trial court to dismiss plaintiff's case without notice for failure to prosecute when plaintiff and his counsel fail to appear for trial on the assigned trial date.
Id. at 128.
The only relevant case cited by the majority is Heard v. Sharp
(1988), 50 Ohio App.3d 34. which reaches a result contrary to the majority opinion. Heard involved the dismissal of claims for failure to prosecute after plaintiff's counsel appeared without his client at the scheduled trial. The trial court conducted an oral hearing with plaintiff's counsel, denied his belated motion for a continuance, and dismissed plaintiff's claims. This court affirmed the trial court's judgment in its entirety.
The principle of oral notice is well established. Even cases cited by the majority and by Petro likewise recognize this basic principle that oral notice in the presence of plaintiff's counsel complies with Civ.R. 41 (B) (1). Carr, cited by the majority ante at pp. 12-13, provides:
 We furthermore recognize that, if a plaintiff or his counsel actually appears at trial, it is sufficient that the motion to dismiss be made in their presence for plaintiff to receive the required notice. Thus, formal written notice is not mandated by Civ.R. 41 (B) (1).
Carr v. Green (1992), 78 Ohio App.3d 487, 490. Metcalf v. OhioState Univ. Hosp. (1981), 2 Ohio App.3d 166, cited in Petro's brief on appeal at p. 5, likewise provides:
 Had counsel actually appeared at trial, it would have been sufficient that the motion to dismiss be made in his presence for him to have received the required notice.
Id. at 167 (citation omitted.) This court recognized this same principle in Ham v. Park (1996), 110 Ohio App.3d 803, 809, and many other cases which have followed Heard.[9] Ham quotes the leading treatise cited in Civ.R. 41 (B) (1) dismissal cases for this precise proposition. See McCormac, Ohio Civil Trial Practice (2d ed. 1992) Section 13.07 at 356-357.
Civ.R. 41 (B) (1) provides only one limitation on the power to dismiss for failure to prosecute: An action may be dismissed only "after notice to plaintiff's counsel." The rule does not require any particular form, content, time, place, or manner of such "notice." The majority's demand for more formalized or elaborate "notice" than occurred in this case is contrary to Civ.R. 1 (B), which provides as follows:
 These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice.
I am aware of no case — until the majority today — which holds that oral notice to counsel on the record in open court during a hearing is insufficient to comply with Civ.R. 41 (B) (1). The express terms of the rule, "after notice to plaintiff's counsel," do not dictate such a conclusion.
"[T]he purpose of notice is to `provide the party in default an opportunity to explain the default or correct it, or to explain why the case should not be dismissed with prejudice.'" Quonset Hut, at 48 (citations omitted.) The notice provided by the trial judge to Petro's counsel fully satisfied this purpose. The record shows that every one was aware of this in the case at bar, including Petro's counsel, who took advantage of the opportunity to explain his views to the trial judge without raising any objection to the notice.[10]
The majority's opinion is directly contrary to our opinion inHeard which follows these well-established principles. The court in Heard summarized the facts of that case as follows:
 [P]laintiff's counsel was present for trial, but plaintiff was apparently in Atlanta, Georgia. Plaintiff's counsel did not have a permanent address for his client, but did contact plaintiff's sister, who said that plaintiff was aware of the trial date. Counsel could only theorize that the head injuries plaintiff had allegedly sustained caused him to blank out and forget the trial. Counsel asked that trial be continued.
Id. at 34-35. The trial court denied the continuance and dismissed Heard's claims with prejudice for lack of prosecution. This court affirmed the dismissal.
In the case at bar, Petro's counsel appeared for trial, as inHeard, without his client, who also was aware of the trial date. The trial court called the case as follows:
 THE COURT: This matter is set for this date, August 20th. You selected this day.
PETRO'S COUNSEL: Yes, your Honor.
THE COURT: Is the plaintiff ready to proceed?
SWEENEY'S COUNSEL: Yes, your Honor.
THE COURT: And defense, do you want to make a statement?
* * *
 THE COURT: Now, Mr. Gerstenslager [Petro's counsel], is pleading without his client. And he has made several phone calls and he was anticipating that his client was going to be here.
 PETRO'S COUNSEL: No. Right, yes. There is always an anticipation on the attorneys, your Honor.
(Tr. 2, emphasis added.)
Petro's counsel likewise theorized, as in Heard, that his client's absence may have been due to illness:
 THE COURT: And he had an opportunity to be here. He is not here for whatever reason. The matter was set and he is not here. If I find out at some point later —
 [PETRO'S COUNSEL:] He just had a knee replacement. He was having quite some difficulty with it. He may be back in the hospital. I don't know.
THE COURT: Well, that is what phones are for.
PETRO'S COUNSEL: Yes.
(Tr. 16, emphasis added.) Petro's counsel, as counsel in Heard, likewise provided nothing to substantiate his claim that his client's absence may have been due to illness. [11]
Finally, as in Heard, Petro's counsel thereafter orally requested a continuance:
 PETRO'S COUNSEL: With regard to the Defendant's Third Party Complaint, I would ask — respectfully ask a continuance be granted until I can find out where he is.
THE COURT: Case was set for trial.
 I'm going to dismiss it for want of prosecution. Case was set for today.
PETRO'S COUNSEL: Okay.
SWEENEY'S COUNSEL: Thank you, your Honor.
THE COURT: I'm going to dismiss it with prejudice.
(Tr. 17, emphasis added.)
The trial court, as in Heard, thereafter denied the continuance and dismissed the claims with prejudice. The majority nevertheless declines to follow Heard and finds that the trial court committed reversible error by adhering to such precedent. In an "effort to distinguish Heard, the majority observes that Heard was "living out of the area," and was "not in contact with his attorney for a prolonged period of time," and there was "no indication that he would appear" at a new trial if a continuance had been granted. (Ante at pp. 13-14.)
Even if these were viable grounds for distinguishing Heard, however, the record does not support them because: (1) the record contains no information concerning Petro's residence,[12] (2) the record does not reveal when Petro's counsel last spoke to Petro,[13]
and (3) the record contains nothing whatsoever to indicate that Petro would attend a new trial if a continuance had been granted. I have quoted each excerpt of the transcript concerning these matters, and the majority's conclusory argument to the contrary is simply unsupported by the record.
More importantly, however, the majority does not address any of the authorities other than Heard that recognize oral notice to counsel is sufficient for purposes of Civ.R. 41 (B) (1). Even if this case were not identical to Heard, the principle that oral notice to counsel is sufficient for purposes of Civ.R. 41 (B) (1) is well established. If anything, the facts of this case are much worse than in Heard. Throughout the proceedings, however, the trial court accommodated Petro's requests. The trial court twice granted his requests for more time to plead, even though the case had been set for a default hearing because Petro did not timely answer. After obtaining these extensions, Petro still belatedly filed his claims. The record shows that Petro's deposition had to be rescheduled when, at the last minute before it was set to begin, he informed Sweeney that he had scheduled a medical procedure for the same time. Approximately one and one-half years elapsed since the case was filed, and trial had already been continued several times. Moreover, Sweeney requested twice, in written documents served on Petro's counsel, that the trial court dismiss the action.[14]
The trial court ultimately cleared its calendar of all other matters on its docket so that it could decide this case, because it was ripe for disposition. Petro, who was himself an attorney, admittedly knew of the scheduled trial, yet did not attend, and did not even call anyone to inform his attorney, the court, or opposing counsel that he would not appear or to suggest an alternative date. Petro's counsel did not seek to proceed with the scheduled trial by introducing the deposition testimony of Petro or offer to go forward without him. Instead counsel sought another continuance.
In suggesting the court could have granted a continuance, the majority overlooks applicable rules governing the scheduling of cases. Municipal Court Loc.R. 7.01 provides:
 All motions for continuances shall be served seven (7) days prior to hearing or trial. The seven (7) day period shall not include the hearing or trial date. (Emphasis added.)
Rule 16 of the Supreme Court Rules for the Superintendence of Municipal Courts provided in part as follows:
(A) Continuances.
 No party shall be granted a continuance of a trial or hearing without a written motion from the party or his counsel stating the reason for the continuance.
 No court shall grant a continuance to any party without first setting a definite date for the trial or hearing. (Emphasis added.)
An oral motion for continuance, after trial was already scheduled to begin, does not comply with either of these rules.
Even after the oral hearing between the trial judge and his counsel discussing the impending dismissal, Petro had yet another opportunity to persuade the trial court before it dismissed his claims. Despite actual notice that the trial court intended to dismiss his claims after counsel failed to prosecute them at the scheduled trial, Petro did not offer to voluntarily dismiss them without prejudice. Nor did Petro subsequently offer any evidence after the hearing to explain why he failed to prosecute his claims or to seek reconsideration of the trial court's intended disposition. The record shows that the trial court did not dismiss Petro's claims by journal entry until eight days after he failed to prosecute them and eight days after he failed to offer any proof to excuse his failure to do so.
In summary, the trial court already provided the requisite notice, conducted one hearing and Petro had a second opportunity to request the trial court consider any other information he desired before it dismissed his claims. Remanding this matter for a third opportunity to permit him to explain why he did not appear or proceed at the scheduled trial is unsound and will be unavailing. See Weiler v. State (May 14, 1996), Franklin App. No. 95API11-1419, unreported. It serves only to further delay, to increase expense, and to further multiply the proceedings in this case.
I am unable to concur in the majority opinion because it fails to follow well established authority recognizing the effectiveness of oral notice of impending dismissal by the trial judge on the record in open court, because it substantially deviates from an extensive body of law under the Uniform Commercial Code governing commercial instruments, and because it does not satisfactorily explain its deviance. I would affirm the judgment of the trial court in its entirety.
[1] I concur in the majority's disposition of the third assignment, which finds no error in the trial court's denial of all pending motions other than for summary judgment and to dismiss. I dissent from the first and second assignments, which assert error in the trial court's grant of summary judgment and dismissal.
[2] Petro never served the law firm with a summons and his claims against it were not a proper third-party complaint under Civ.R. 14 (A) because the complaint was based on independent claims against the law firm and recovery was not dependent upon recovery by Sweeney against him on the personal loan.
[3] Sweeney's response to Petro's motion to compel stated in part: "it is requested that the Court * * * rule on the plaintiff's request to dismiss the defendant's [Petro's] Counterclaim, Third-Party Complaint and Complaint for Accountancy [sic] * * *."
[4] Petro's brief in opposition in the trial court before the hearing argued that (1) the motion for summary judgment was not filed with leave of court and that the case had been scheduled for trial, (2) he had not yet deposed Sweeney, and (3) "copies of documents attached to his motion have not even been validated by anyone and are not of the evidentiary quality required by Rule 56 (e), O.R.Civ.P." (Id. at pp. 1-2.) By the time of the hearing, the trial court granted leave to file the motion for summary judgment and Petro had deposed Sweeney. His one and one-half page argument in his brief on appeal focuses solely on the validity of the cognovit provision in the note and does not raise any of these arguments.
[5] Petro's counsel stated in part: "Our real response to the motion is, that he did sign a note. * * * He can acknowledge that he signed, or it is his signature on bottom of the note." (Tr. 9, 15-16.)
[6] Evid.R. 1003 provides as follows:
Admissibility of duplicates
 A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.
[7] Ironically, when signing Ohio Legal Blank standard form "Cognovit Note No. 18-B (1974) (Other than consumer loans and consumer transactions)," Petro specifically agreed to "release all errors and waive all right to appeal."
[8] Petro's claims were filed out of rule. He did not even properly serve his third-party complaint. The third-party complaint was not within the scope of Civ.R. 14 (A). Petro announced at the last minute he would not attend his own deposition. In addition to his unannounced and unexplained failure to attend or prosecute his claims at trial, his counsel made a belated oral motion for continuance which did not comply with the rules.
[9] Shoreway Circle Inc. v. Gerald Skoch Co., LPA (1994),92 Ohio App.3d 823, cited by the majority, cites Heard as good authority. To date, we have consistently followed Heard. Seee.g., Murphy v. Industrial Comm. of Ohio (Feb. 27, 1997), Cuyahoga App. No. 71149, unreported; Sato v. City of Brooklyn (Nov. 12, 1992), Cuyahoga App. No. 61067, unreported.
[10] If there had in fact ever been any doubt about whether the issue of dismissal would arise at the hearing, it should have been dispelled by the fact that Sweeney filed and served on Petro's counsel two written requests that the trial court dismiss Petro's claims on other grounds.
[11] Petro made the same health claim two months earlier on the eve of his deposition when the case was last scheduled for trial. The parties agreed at that time to reschedule his deposition for one week later when he was better to accommodate him.
Petro's explanation differed in an affidavit stapled for the first time to his brief on appeal:
 2. On or about October 21, 1998 while I was on business in Columbus, Ohio I became violently ill with the flu, and
 3. I was unable to attend the trial of the above captioned matter due to my illness and was unable to even return to Cleveland or contact my attorney until after the time of the trial scheduled for 1:00 P.M. on October 22. 1998 * * *.
We are unable, however, to consider material which is appended to a brief on appeal but not presented to the trial court. State v.Ishmail (1978), 54 Ohio St.2d 402.
[12] The complaint against Petro was served at a business address in Cleveland. The record refers to his purchase of real estate in Florida. The only other information is the affidavit filed with his brief on appeal, which states he was in Columbus, Ohio, at the time of trial.
[13] The record shows only that counsel "anticipated" his client was going to appear, made calls during the delay before the proceedings began on the record, and left his cellular phone on in the court room in case his client called.
[14] Although neither request contemplated Petro would fail to appear for trial, the requests provided further notice of a possible dismissal and notified Petro of the need to defend against dismissal.end;