OPINION
{¶ 1} Plaintiff-appellant/cross-appellee Sharon K. Cooper appeals the decision of Greene County Court of Common Pleas, Domestic Relations Division, adopting in part and modifying in part a decision of the magistrate regarding the division of defendant-appellee/cross-appellant *Page 2 
Danny L. Cooper's retirement benefits, as well as certain financial accounts specified in the parties' Final Decree of Divorce. Danny's cross-appeal also involves the trial court's disposition with respect to the allocation of the funds in the accounts.
 {¶ 2} The magistrate's decision was filed on May 12, 2006. The judgment and entry adopting in part and modifying in part the decision of the magistrate was filed by the trial court on August 16, 2007. On September 12, 2007, Sharon filed a notice of appeal with this Court. Danny filed a notice of appeal with this Court two days later on September 14, 2007.
 I {¶ 3} Sharon and Danny were married on February 1, 1991. No children were born during the marriage. The parties separated on March 14, 2003, and the magistrate used that date as the de facto termination date of the marriage. On March 21, 2003, Sharon filed a complaint for divorce. The Final Decree of Divorce was subsequently issued on August 11, 2005.
 {¶ 4} Prior to the filing of the final divorce decree, the parties were able to resolve numerous issues regarding the division of the marital property. However, the parties were unable to reach an agreement with respect to a determination of Sharon's interest in Danny's military retirement fund, as well as each party's interest in certain financial accounts maintained by Sharon and Danny. A hearing was held on these issues before the magistrate on April 20, 2006. As previously mentioned, the magistrate issued her decision on May 12, 2006. After Sharon and Danny both filed objections to the magistrate's decision, the trial court rendered its decision on August 16, 2007, which adopted in part and modified in part the decision of the magistrate. It is from this decision that both Sharon and Danny now appeal.
 II *Page 3 {¶ 5} The trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disrupted on appeal absent unreasonable, arbitrary, or unconscionable conduct.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401, citingHolcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131; Martin v. Martin
(1985), 18 Ohio St.3d 292, 294-295; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; Berish v. Berish (1982), 69 Ohio St.2d 318, 319. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Middendorf,82 Ohio St.3d at 401.
 III {¶ 6} Because Sharon's first assignment of error and Danny's sole assignment of error are interrelated, they will be discussed together. Sharon's first assignment is as follows:
 {¶ 7} "THE TRIAL COURT'S CHARACTERIZATION OF $46,683 OF THE `JANUS FUND IRA' AS APPELLEE/CROSS-APPELLANT'S SEPARATE PROPERTY WAS NOT SUPPORTED BY THE EVIDENCE AND CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 8} Danny's sole assignment is as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN ITS ENTRY MODIFYING THE MAGISTRATE'S DECISION AND ORDER FILED AUGUST 16, 2007, IN OVERRULING APPELLEE/CROSS-APPELLANT'S OBJECTIONS REGARDING THE JANUS FUND IRA."
 {¶ 10} In her first assignment, Sharon contends that the trial court abused its discretion when it found that $46,683.00 from the account's value of $62,528.84 was *Page 4 
the separate property of Danny. The magistrate used the parties' separation date March 14, 2003, as the cut-off date for valuation purposes. According to the calculations of the magistrate, only$15,317.00 was martial property, thus entitling Sharon to only $7,658.50 from the Janus Fund IRA. Initially, Sharon argues that Danny failed to prove by competent, credible evidence that any part of the Janus Fund IRA was his separate property. In the alternative, Sharon argues that only a small portion of the Janus Fund IRA was funded by Danny's separate property, and that she is, therefore, entitled to a much larger portion of the financial account.
 {¶ 11} On the other hand, Danny argues that the trial court erred when it found that the Janus Fund IRA had a value of $62,528.84 as of the parties' date of separation. Danny asserts that the record establishes that the Janus Fund IRA was valued at $47,476.10 on January 1, 2003, two months prior to the parties' date of separation. Danny contends that the trial court abused its discretion when it stated the account was worth $62,528.84, the value of the account on December 31, 2003, more than nine months after the separation date. Had the trial court utilized the correct amount of $47,476.10 to value the account, Danny argues that the entire account would have been characterized as separate property that he accumulated prior to marriage. Thus, no portion of the account would be subject to division between the parties as marital property, and Danny would retain the entire amount contained in the fund.
 {¶ 12} As we recently stated in Oberly v. Oberly, Greene County App. No. 06-CA-90, 2007-Ohio-4571:
 {¶ 13} "The Ohio Revised Code defines separate property, in pertinent part, as *Page 5 
`all real and personal property and any interest in real or personal property that is found by the court to be any of the following: (ii) any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage; (iii) passive income and appreciation acquired from separate property by one spouse during the marriage.' R.C. 3105.171(A)(6)(a). Commingling of separate property with other property does not convert the separate property into marital property unless the separate property is untraceable. R.C. 3105.171(A)(6)(b). The focus in determining whether separate property has become marital property after commingling with marital property is traceability of separate assets. Peck, supra."Peck v. Peck (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. Once traced, the separate property is to be distributed to its individual owner. R.C. § 3105.171(D).
 {¶ 14} The burden of proof that specific property is not marital but separate is upon the proponent of the claim to prove by a preponderance of the evidence. Peck, 96 Ohio App.3d at 734, 645 N.E.2d 1300. "Oral testimony as evidence, without corroboration, may or may not satisfy the burden." Maloney v. Maloney, 160 Ohio App.3d 209, 218-219,2005-Ohio-1368, ¶ 23, citing Fisher v. Fisher, Montgomery App. No. 20398, 2004-Ohio-7255. "Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent credible evidence." Id.
 {¶ 15} With respect to the Janus Fund IRA, the evidence adduced at the hearing established that as of the date of the parties' marriage February 1, 1991, the account contained $12,198.10 of Danny's separate property. It is also important to *Page 6 
note that evidence was presented that in 1988, Danny owned another account, the AIM Summit IRA, which contained approximately $7,663.00 in separate property. In 2000, the AIM Summit IRA contained approximately $46,683.00 which Danny transferred entirely into the Janus Fund IRA. While Danny points out that the evidence established that the Janus Fund IRA contained $47,476.10 as of January 1, 2003, the evidence also demonstrated that the account contained $62,528.84 as of December 31, 2003. Since there was no direct evidence regarding the exact amount of money in the Janus Fund IRA on the date of the parties' separation, March 14, 2003, the trial court chose the date and valued the account at $62,528.84. Because we defer to the findings of the trial court in this regard, Danny's sole assignment of error in his cross-appeal is overruled.
 {¶ 16} However, our analysis does not end there. The trial court agreed with the magistrate and found that the entire sum of $46,663, which was transferred from the AIM Summit IRA to the Janus Fund IRA in 2000 was the separate property of Danny. The court based its decision solely on Danny's testimony that the AIM Summit IRA was initially funded by his separate property in 1988, and appreciated in size due to reinvestment from passive gains in the account. Danny produced financial records that purported to show that by 2000, when he transferred all of the funds from the AIM Summit IRA to the Janus Fund IRA, the AIM Summit IRA had grown from the initial investment of $7,663.00 to $46,663, a gain of approximately $40,000. However, Danny, produced no evidence, other than his own testimony, to clearly establish that the appreciation of the AIM Summit Account was from reinvestment of passive gains in the account. Thus, we hold that the trial court abused its discretion when it held that *Page 7 
the entirety of the AIM Summit IRA was Danny's separate property, because, in our view, he failed to meet his burden of proof, by clear and convincing evidence, that the specific property was not marital but separate.
 {¶ 17} Rather, we find that the record establishes that only Danny's initial investment of $7,663.00 in the AIM Summit IRA prior to his marriage was separate property. Moreover, we find that Danny was able to establish that his initial investment of $12,198.10 in the Janus Fund IRA was separate property because it, too, was made prior to his marriage to Sharon. Thus, of the $62,528.84 in the Janus Fund IRA as of December 31, 2003, Danny is entitled to $19,861.10 as his separate property. The remaining $42,667.74 in the Janus Fund IRA is to be distributed as marital property, and Danny and Sharon each shall receive $21,333.87 as their marital portion of said account. Sharon is entitled to $21,333.87, while Danny is entitled to both his separate and marital portions of the account for an aggregate sum of $41,194.97.
 {¶ 18} Sharon's first assignment of error is sustained to the extent described in the foregoing analysis, and Danny's sole assignment of error in his cross-appeal is overruled.
 IV {¶ 19} Sharon's second assignment of error is as follows:
 {¶ 20} "THE TRIAL COURT'S CHARACTERIZATION OF THE `NON-JANUS 20 FUND' AND THE `JANUS 20 FUND' AS APPELLEE/CROSS-APPELLANT'S SEPARATE PROPERTY WAS NOT SUPPORTED BY THE EVIDENCE AND CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 21} In her second assignment, Sharon contends that the record does not *Page 8 
support the trial court's holding that both the Janus 20 Fund and the Non-Janus 20 Fund were Danny's separate property. Specifically, Sharon argues that Danny failed to prove by a preponderance of the evidence that either the Janus 20 or the non-Janus 20 accounts were initially capitalized with his separate, traceable funds prior to marriage. Moreover, Sharon asserts that Danny failed to prove by clear and convincing evidence that both accounts appreciated due to passive reinvestment of gains. In the alternative, Sharon argues that since Danny transferred the accounts into joint status by placing her name along with his on both accounts, he voluntarily converted the accounts into marital property. Thus, Sharon argues that both accounts should have been found to be marital property in their entirety, and she is entitled to half the sums remaining in each fund.
a. Issue Regarding Donative Intent
 {¶ 22} With respect to the non-Janus 20 fund and the Janus 20 fund, Sharon argues that when Danny placed her name on each of the accounts on July 16, 1993, he voluntarily transmuted both accounts in their entirety into marital property. Therefore, Sharon contends that she is entitled to half of the funds in both accounts. We disagree.
 {¶ 23} R.C.3105.171(H) acknowledges that holding property in co-ownership with a spouse is not determinative whether the property is separate or marital property. Nevertheless, a husband can convert separate property into marital property by making an inter vivos gift to his wife. Helton v. Helton (1996), 114 Ohio App.3d 683, 685,683 N.E.2d 1157, 1159. To prove that an inter vivos gift has been made, the following elements are required: "(1) an intention on the part of the donor [husband] to *Page 9 
transfer the title and right of possession of the particular property to the donee [wife] then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it." Id.
 {¶ 24} The issue, then, is whether there is sufficient evidence in this record to support a finding, by clear and convincing evidence, that Danny intended to convey to Sharon an interest in his separate property — the non-Janus 20 Fund and the Janus 20 Fund — when he transferred the accounts into joint status by placing her name along with his on both accounts.
 {¶ 25} As stated previously, appellate courts review a trial court's division of property under an abuse of discretion standard, but a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence. Mays v. Mays (2001), Miami App. No. 2001 Ohio 1450. When we consider manifest weight arguments, we "review the evidence, and . . . determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof."Howard v. Howard (Mar. 20, 1998), Montgomery App. No. 16542.
 {¶ 26} In the instant case, we agree with the decision of the trial court and hold that Sharon failed to meet her burden of establishing by clear and convincing evidence that Danny intended to make an inter vivos gift of either the non-Janus 20 Fund or the Janus 20 Fund. Although Danny testified that he believed at the beginning of the marriage that he and Sharon should share their respective finances, he did not intend to gift half of either account's value to Sharon. Danny also testified that Sharon had *Page 10 
already struck him once by the time he added her name to the accounts. He further testified that the alleged spousal abuse was the reason that he did not put her name on any of his other accounts. The only evidence presented by Sharon in support of her argument that both accounts were marital property was that on July 16, 1993, Danny, in fact, added her name to the non-Janus 20 Fund and the Janus 20 Fund. However, this action standing alone is insufficient to establish donative intent on the part of Danny regarding the ownership of the non-Janus 20 Fund and the Janus 20 Fund.
B. The Non-Janus 20 Fund
 {¶ 27} Again, the trial court has broad discretion to divide property, and its decision will not be disrupted on appeal absent unreasonable, arbitrary, or unconscionable conduct. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401, 696 N.E.2d 575.
 {¶ 28} With respect to the non-Janus 20 Fund, Danny presented evidence in the form of his own testimony as well as two documents which purported to establish that as of the date of the parties' marriage, the account contained $12,887.62 in separate funds. On July 16, 1993, Danny placed Sharon's name on the account, thus transferring said account into joint status. On that date, the account had a value of $26,405.53. As of the parties' date of separation on March 14, 2003, the account contained an aggregate sum of $36,490.64.
 {¶ 29} After a thorough review of the record, we hold that Danny proved by a preponderance of the evidence that the non-Janus 20 account was initially capitalized by separate, traceable property. Thus, Danny is entitled to his initial investment in the *Page 11 
non-Janus 20 fund of $12,887.62. However, the record fails to establish by clear and convincing evidence that following his marriage to Sharon, Danny continued to fund the account by only reinvesting passive gains on the account. Danny proffered a document that purported to show a reinvestment of passive gains on the account on December 31, 1993. Defendant's Ex. B. However, he provided no other documentation to corroborate his testimony that the account was solely funded during the marriage by the reinvestment of passive gains. The parties' marriage lasted over twelve years, and the non-Janus 20 account valued at $12,887.62 before the marriage, increased to a value of $36,490.64 as of the date of separation. Simply providing evidence identifying only one date during a period of approximately twelve years is insufficient to establish, by clear and convincing evidence, that all growth in a financial account occurred solely as a result of reinvestment of passive gains. Absent proper documentation outlining the entire life of the account to support his claim, Danny did not meet his burden to prove that the funds appreciated solely due to reinvestment of passive gains. Thus, we must infer that the funds remaining in the non-Janus 20 account (after subtracting Danny's traceable investment which was made prior to the marriage) are marital property. R.C. § 3105.171(A)(3)(a).
 {¶ 30} Of the $36,490.64 in the non-Janus 20 account as of March 14, 2003, Danny is entitled to $12,887.62 as his separate property. The remaining $23,603.02 in the non-Janus 20 account is to be distributed as marital property, and Danny and Sharon each shall receive $11,801.51 as their marital portion of said account. Sharon is entitled to $11,801.51, while Danny is entitled to both his separate and marital portions of the account for an aggregate sum of $24,689.13. *Page 12 
C. The Janus 20 Fund
 {¶ 31} With respect to the Janus 20 Fund, the record contains evidence in the form of Danny's testimony as well as a document which purported to establish that as of the date of the parties' marriage, the account contained $7,828.28 in separate funds. On July 16, 1993, Danny placed Sharon's name on the account, thus transferring said account into joint status. On that date, the account had a value of approximately $16,000.00. On March 31, 2006, the record shows that the account contained an aggregate sum of $55,145.50.
 {¶ 32} After a thorough review of the record, we hold that Danny proved by a preponderance of the evidence that the Janus 20 account was initially capitalized by separate, traceable property. Thus, Danny is entitled to his initial investment in the non-Janus 20 fund of $7,828.28. However, the record fails to establish by clear and convincing evidence that following his marriage to Sharon, Danny continued to fund the account by only reinvesting passive gains on the account. Danny proffered a document that purported to show a reinvestment of passive gains on the account on December 31, 1991. Defendant's Ex. A. The parties' marriage lasted over twelve years, and the Janus 20 account worth $7,828.28 before the marriage, increased in value to $55,145.50 on March 31, 2006. Simply providing evidence identifying only one date during a period of approximately twelve years is not adequate to establish, by clear and convincing evidence, that all growth in a financial account occurred as a result of reinvestment of passive gains. The documentation offered to establish that the account was solely funded by the reinvestment of passive gains was inadequate to support this contention. Without proper documentary corroboration to support his *Page 13 
assertion, Danny did not meet his burden to prove that the funds appreciated due solely to passive reinvestment of gains. Thus, we must infer that the funds remaining in the Janus 20 account (after subtracting Danny's traceable investment which was made prior to the marriage) are marital property. R.C. § 3105.171(A)(3)(a).
 {¶ 33} Of the $55,145.50 in the Janus 20 account as of March 14, 2003, Danny is entitled to $7,828.28 as his separate property. The remaining $47,317.22 in the Janus 20 account is to be distributed as marital property, and Danny and Sharon each shall receive $23,658.61 as their marital portion of said account. Sharon is entitled to $23,658.61, while Danny is entitled to both his separate and marital portions of the account for an aggregate sum of $31,486.89.
 {¶ 34} Sharon's second assignment of error is sustained in part and overruled in part.
 V {¶ 35} Sharon's third assignment of error is as follows:
 {¶ 36} "THE TRIAL COURT'S FAILURE TO AWARD APPELLANT/CROSS-APPELLEE ON HER SHARE OF THE MARITAL PORTION OF SEVERAL FINANCIAL ACCOUNTS['] INVESTMENT EARNINGS THAT ACCRUE ON HER SHARE OF SUCH ACCOUNTS UNTIL DISTRIBUTION TO HER IS INEQUITABLE AND CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 37} In her third assignment, Sharon contends that the trial court erred when it failed to award her any passive gains from the financial accounts in which she was found to have a marital property interest. Specifically, Sharon lists the following accounts as those from which she should receive an amount that reflects not only the *Page 14 
proper division of the those assets determined by the trial court to be marital property, but also any gains that have accrued on said accounts since the date from which the dollar amounts were determined by the trial court. Those accounts are as follows: a) AIM Summit Investment Plan, Acct. #7029119656-2, fund code 67; b) Janus Money Market Fund, Acct. #813672-7FC, fund code 44; c) Janus Fund IRA, Acct. # 202932659, fund code 42; d) Janus Worldwide IRA, Acct. # 202932659, fund code 41; and e) Bank One IRA, Plaintiff's Ex. 1.
 {¶ 38} We agree with Sharon and find that the trial court abused its discretion in failing to award her any of the passive gains that have accrued on the marital portions of the accounts as of the dates chosen by the court in order to determine the specific dollar amount in each account. Thus, we remand this matter for further proceedings in order to ascertain the passive gains that have accrued on the marital portions of the accounts so that they may be equitably distributed among the parties. In doing so, the trial court should take into account any modifications to those portions of the accounts found to be marital in nature as a result of this opinion.
 {¶ 39} Sharon's third assignment of error is sustained.
 VI {¶ 40} Sharon's fourth and final assignment of error is as follows:
 {¶ 41} "THE TRIAL COURT'S FAILURE TO ORDER APPELLEE/CROSS-APPELLANT TO PAY TO APPELLANT/CROSS-APPELLEE HER SHARE OF HIS MILITARY RETIREMENT FOR THE TIME PERIOD OF MAY 12, 2006 THROUGH AUGUST 31, 2007 CONSTITUTES AN ABUSE OF DISCRETION."
 {¶ 42} The magistrate awarded Sharon a percentage of Danny's military *Page 15 
retirement pension. The award also included $7,096.59 from the period of August 11, 2005 (date of final decree of divorce) through April, 2006, which remained unpaid.
 {¶ 43} In her initial objections as well as her supplemental objection to the magistrate's decision regarding the division of property, Sharon did not object to any of the magistrate's calculations with respect to the division of Danny's military retirement benefits between the parties. The magistrate's decision states in pertinent part:
 {¶ 44} "Therefore, this magistrate finds that a coverture fraction should be used for the military retirement, that being 145.5 months over 240.5. months divided by 50% entitling Sharon Cooper to 30% of Danny Cooper's regular retirement. This would have been effective August 11, 2005. Therefore, this magistrate finds that there are arrears owed through April 2006 in the amount of $7,096.59. This amount shall be paid to Sharon Cooper within 30 days of the date of this Decision."
 {¶ 45} The trial court modified this decision, ordering that Danny start making direct payments to Sharon on September 1, 2007. This would leave a gap of time where Danny was not required to pay Sharon from May 2006 through September 1, 2007. The trial court specifically refused to make such a requirement effective any sooner than September 7, 2007. In support of its decision, the trial court reasoned as follows:
 {¶ 46} "The Court finds the Defendant had an ongoing obligation to pay the Plaintiff her marital portion of the military retirement from May 12, 2006[,] until the Military Qualifying Order is filed. However, the magistrate did not specifically order the Defendant to make direct payments to the Plaintiff and the Plaintiff did not object, so there is nothing currently before the Court to consider." *Page 16 
 {¶ 47} It is undisputed that the magistrate failed to order Danny to make direct payments to Sharon of her monthly portion of his military retirement benefits. Although Sharon did not object to this omission in the magistrate's decision, the award of benefits was clearly made. Yet, the trial court, utilizing its equitable powers, arbitrarily ordered Danny to make direct payments to Sharon on the later date of September 1, 2007. It is unclear why the trial court chose to exercise its powers in equity to remedy one omission by the magistrate, while refusing to do the same to remedy another equally glaring omission. The trial court even states that Danny "had an ongoing obligation to pay [Sharon] her marital portion of the military retirement from May 12, 2006[,] until the Military Qualifying Order [was] filed." Despite this clear and unequivocal finding, the trial court still refused to order Danny to pay Sharon her portion of his retirement benefits for the period of time from May, 2006, through August, 2007. Thus, we find that the trial court's actions in this regard constitute an abuse of discretion. Sharon is clearly entitled to payment for the time period in question.
 {¶ 48} Sharon's fourth and final assignment of error is sustained.
 VII {¶ 49} The judgment of the trial court having been affirmed in part and reversed in part, the matter is remanded for proceedings consistent with this opinion.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Mark Edward Stone
 David M. McNamee *Page 17 
W. Randall Rock
 Hon. Steven L. Hurley *Page 1