[Cite as *Jones v. Jones*, 2020-Ohio-6851.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DIANA LYNN JONES | : | |
| | : | |
|     Appellee – Cross-Appellant | : | Appellate Case No. 28746 |
|     Plaintiff | : | |
| | : | Trial Court Case No. 2016-DR-127 |
| v. | : | |
| | : | (Appeal from Common Pleas |
| JEFFREY T. JONES | : | Court – Domestic Relations Division) |
| | : | |
|     Appellant – Cross-Appellee | : | |
|     Defendant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of December, 2020.

. . . . . . . . . . .

JON PAUL RION, Atty. Reg. No. 0067020 and CATHERINE H. BREAULT, Atty. Reg. No. 0098433, 130 West Second Street, Suite 2150, Dayton, Ohio 45402
    Attorneys for Appellee – Cross-Appellant Plaintiff

THOMAS G. EAGLE, Atty. Reg. No. 0034492, 3400 North State Route 741, Lebanon, Ohio 45036
    Attorney for Appellant – Cross-Appellee Defendant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Jeffrey T. Jones appeals from a judgment entered by the Montgomery County Common Pleas Court, Domestic Relations Division. Jeffrey contends that the trial court erred by determining that the proceeds of a settlement that his former wife, Diana Lynn Jones, received in a civil action were her separate property. He further contends that the court erred by ordering him to pay spousal support. Finally, he contends that the trial court erred by ordering him to pay Diana her share of the marital property within six months of the divorce decree.

{¶ 2} We conclude that the trial court erred in its settlement-proceeds determination because the court did not decide the issue by review of all the relevant evidence. We conclude that the trial court did not err by awarding spousal support. As for the timeframe for the required payment, because the amount that Jeffrey owes Diana as her marital share of the property will change, we decline to address this issue. Accordingly, we affirm in part, reverse in part, and remand for the trial court to determine how to divide the settlement proceeds.

## I. Factual and Procedural Background

{¶ 3} Jeffrey and Diana Jones were married in February 2008. They have no children together.

{¶ 4} Both parties used to work for the Montgomery County Engineer's Office. Jeffrey worked there from 1991 until he was fired in 2007. Diana worked in the Engineer's Office from 2002 until she was fired in 2009. Diana believed that she was improperly fired on the basis of her gender and in retaliation for filing discrimination complaints with the County Engineer, the Ohio Civil Rights Commission, and the Equal Employment

Opportunity Commission. As a result, in 2013, Diana and Jeffrey filed a civil suit against the Engineer's Office and the County Engineer. The suit sought damages for sex and gender discrimination, retaliation, intentional infliction of emotional distress, loss of consortium, breach of contract, reckless conduct, and malice; it also sought punitive damages. The complaint alleged that Diana had been bypassed for promotions and raises and that she had been subject to gender discrimination. The complaint also alleged that, before their marriage, Jeffrey was Diana's supervisor, and he was fired in retaliation for his attempt to intercede on her behalf with the County Engineer. The matter was settled in June 2015. The settlement agreement stated that the settlement was the "result of bona fide adversarial negotiations to resolve a tort based case involving Plaintiff, Diana Jones' physical sickness." The agreement further provided that, in exchange for the dismissal of all claims made by both Jeffrey and Diana, the Engineer's Office would pay $750,000 in checks payable to Diana.

{¶ 5} In February 2016, Diana filed for divorce. She maintained that the 2015 settlement proceeds were her separate property, but Jeffrey maintained that they were marital. Jeffrey subpoenaed documents related to the settlement from the Engineer's Office and from the Montgomery County Prosecutor's Office (which represented the County Engineer and the Engineer's Office in the action), which he said contained information supporting his claim. The Prosecutor's Office moved to quash the subpoenas, arguing that the documents sought were confidential. The trial court ultimately reviewed the documents in camera and decided not to release any to Jeffrey.

{¶ 6} The final divorce hearing was conducted over two days in late 2017 and early 2018. On June 26, 2018, the trial court issued a final judgment and decree of divorce.

The court concluded that the settlement proceeds were Diana's separate property, because by statute, "[c]ompensation to a spouse for the spouse's personal injury" is that spouse's separate property, R.C. 3105.171(A)(6)(a)(vi), and the settlement agreement provided that the payments were made to Diana for her "physical sickness." The trial court also divided the parties' other property, including Jeffrey's interest in two businesses, a farming business and a snow removal/trucking business. Diana's expert valued both businesses combined at $202,477. The court found that the value of the farming business was $110,000 and the value of the snow removal/trucking business was $92,477. The court awarded Diana half of both values ($55,000 and $46,238.50). The court also ordered Jeffrey to pay spousal support of $900 per month for 36 months.

{¶ 7} Jeffrey appealed the final judgment and divorce decree, arguing that the trial court erred by failing to release the subpoenaed documents to him, erred in the division of property, and erred by ordering him to pay spousal support. We agreed that the trial court should have permitted Jeffrey to inspect the subpoenaed documents; we also agreed that the trial court erred in its property division. *Jones v. Jones*, 2019-Ohio-2355, 138 N.E.3d 634 (2d Dist.). We first concluded that the court's determination on the settlement proceeds constituted an abuse of discretion. Noting that the trial court's finding that the proceeds were Diana's separate property was based on the language of the settlement agreement, which referred to Diana's "physical sickness," and on the fact that the settlement checks were payable to her, we held that the court should have also considered the other evidence regarding the nature of the proceeds, including the subpoenaed documents and the parties' testimony. *Id.* We then concluded that by denying Jeffrey the right to review the subpoenaed documents, the trial court had wrongly

denied him an opportunity to establish the marital nature of the settlement proceeds. As for the division of Jeffrey's businesses, we concluded that the trial court erred by awarding Diana half of the snow removal/trucking business; Jeffrey had acquired that business before the marriage and there was no evidence as to the value of the business at the time of the marriage, so the trial court could not have determined that there was any increase in its value. Lastly, we concluded that, because our decision regarding the property division might effect on the spousal-support determination, the award of spousal support needed to be reconsidered. We reversed and remanded. *Id.*

{¶ 8} At the end of October 2019, after having given Jeffrey an opportunity to examine the subpoenaed documents, the trial court held a hearing on the nature of the settlement proceeds. In early February 2020, the trial court issued a judgment in which it again determined that the settlement proceeds were entirely Diana's separate property. The court found that the language of the settlement agreement plainly and unambiguously showed that the settlement proceeds were for Diana's "physical sickness," and the court refused to consider any other evidence. As for spousal support, the court again awarded Diana $900 per month for 36 months, retaining jurisdiction to make modifications if there were a change in circumstances of either party. On March 4, 2020, the trial court entered a new final judgment and decree of divorce that incorporated its property-division and spousal-support determinations. The court entered the new judgment nunc pro tunc to the original 2018 judgment. The trial court again ordered Jeffrey to pay Diana her share of the marital property within six months of the divorce decree.

{¶ 9} Jeffrey appeals.

## II. Analysis

{¶ 10} Jeffrey raises three assignments of error, which challenge the trial court's decisions on the settlement proceeds, spousal support, its use of a nunc pro tunc entry, and the timeframe for his marital-property payment.

### A. The settlement proceeds

{¶ 11} The first assignment of error alleges:

THE TRIAL COURT ERRED IN DETERMINING THE MARITAL NATURE

OF AND DIVIDING THE PARTIES CIVIL SETTLEMENT.

{¶ 12} Jeffrey contends that the trial court again erred by determining that the settlement proceeds were Diana's separate property rather than marital property.

{¶ 13} "Appellate courts review a trial court's division of property under an abuse of discretion standard, but a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence." *Hall v. Hall*, 2d Dist. Greene No. 2013-CA-15, 2013-Ohio-3758, ¶ 12, citing *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345 (Oct. 12, 2001). When considering the evidence's weight, we " 'review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof.' " *Id.*, quoting *Cooper v. Cooper*, 2d Dist. Greene Nos. 2007-CA-76 and 2007-CA-77, 2008-Ohio-4731, ¶ 25.

{¶ 14} " 'Marital property' does not include any separate property." R.C. 3105.171(A)(3)(b). "Separate property" includes "[c]ompensation to a spouse for the spouse's personal injury," except for those amounts attributable to a "loss of marital earnings and compensation for expenses paid from marital assets." R.C. 3105.171(A)(6)(a)(vi). "Thus, the trial court must look to the totality of the circumstances

in order to determine whether such proceeds are the product of anything other than the spouse's injury." *Jones*, 2019-Ohio-2355, 138 N.E.3d 634, at ¶ 21. "The classification of property as marital or separate must be supported by competent, credible evidence." *Id.* at ¶ 18, citing *Mays* at *3. Property acquired during marriage is presumed to be marital property. *Id.* at ¶ 14, citing R.C. 3105.171(3)(a)(i). "The proponent of a claim that specific property is separate, not marital, bears the burden to prove that claim[.]" (Citation omitted.) *Umbaugh v. Stinson*, 2d Dist. Greene No. 2019-CA-62, 2020-Ohio-3299, ¶ 11.

{¶ 15} The trial court here determined that the settlement proceeds were Diana's separate property as compensation for her "physical injury" solely because the settlement agreement stated that the settlement was to resolve a case involving Diana's "physical sickness." The court refused to consider any other evidence, citing contract law that provides that if the language of a contract is plain and unambiguous, a court cannot consider extrinsic evidence. But the settlement agreement at issue here was not an agreement between Jeffrey and Diana; rather, it was an agreement between Diana and Montgomery County and Jeffrey and Montgomery County. So the settlement agreement was simply one piece of evidence regarding the nature of the settlement proceeds. The other relevant evidence must be considered too — including the testimony that Diana gave at the hearings and the subpoenaed documents.

{¶ 16} At both hearings Diana maintained that the $750,000 was paid to her for her physical sickness only. She testified that the settlement was paid to her because she became unable to work due to her physical sickness, which consisted of "severe manic depressive and anxiety disorder [and] severe panic attacks," all of which caused her to "struggle with keeping things straight." (2017 Hrg. Tr. 91 and 108.) She further testified

that her "health conditions debilitated [her] to where [she] physically was not able to do a lot of things that [she] used to be able to do." (*Id.* at 155.) Diana testified that her head, neck, and back were hurt, and that her "injuries were all mental health that caused physical problems." (2019 Hrg. Tr. 27.)

{¶ 17} But some of her testimony undermined her claim. When asked during cross-examination about the reason for her inability to work, Diana responded that "the stress of all of this six years of straight lawsuit, fighting officials, state officials, and letters and documents, and six years. * * * And my health deteriorated during that period of time." (2017 Hrg. Tr. 171.) We pointed out in our first opinion that, "[s]ince the hearing was conducted in 2017 and 2018, Diana's testimony indicated that her medical conditions did not manifest until well after her employment ended in 2009. It further indicated that the conditions were the result of stress induced by the litigation process rather than her actual employment." *Jones*, 2019-Ohio-2355, 138 N.E.3d 634, at ¶ 25, fn. 3. Diana was asked at the hearing on remand about her former testimony suggesting that it was the litigation that had caused her medical problems rather than her actual employment. She replied that "[i]t was both." (2019 Hrg. Tr. 31.) Diana never submitted any documents supporting her claims about her medical conditions, nor did she ever present the testimony of a medical provider to corroborate her claims.

{¶ 18} The subpoenaed documents, which were admitted as evidence at the hearing on remand, were emails and letters exchanged between the Joneses' attorney and the Prosecutor's Office negotiating the settlement of the Joneses' claims against the county. This correspondence showed that, assuming physical sickness or injury was involved, the money was paid as more than just compensation for it. There was no

mention of injury or sickness until the end of the negotiations. Moreover, the correspondence showed that, early on, Diana intended to return to her job at the Engineer's Office and was not making any claim that she was disabled. Her return to work was predicated merely upon a satisfactory payment of back pay. But as the terms of the settlement continued to be negotiated, the Engineer's Office obtained a provision that neither Jeffrey nor Diana could return to work.

{¶ 19} The first mention of injury or sickness came in a letter from the Joneses' attorney to the county attorney in which the Joneses state their conditions for settlement (Def. Ex. EEE.) The letter proposed that the county pay the Joneses $750,000 "[i]n exchange for the considerations offered by Plaintiffs as referenced herein." These considerations included: (1) the mutual waiver of all claims; (2) a mutual non-disparagement agreement; (3) that the Joneses would be ineligible for employment with the county; (4) that the Joneses resolve their court case and case with the State Personnel Board against the county; (5) that the settlement agreement and the check(s) not contain any mention of, or reference to, "wages(s)"; and (6) that a form 1099 not be issued. The Joneses also asked that the settlement agreement contain the following language: "This settlement is the result of bona fide adversarial negotiations to resolve a tort based case involving Plaintiff's physical sickness," and "By this agreement Defendants in no way admit causing any physical ailment considered in reaching this settlement." This letter shows that the $750,000 payment was for many things, not just compensation for Diana's physical sickness.

{¶ 20} The language that the Joneses requested made it into the settlement agreement: "This settlement is the result of bona fide adversarial negotiations to resolve

a tort based case involving Plaintiff, Diana Jones' physical sickness." It is this language on which the trial court exclusively relied to find that the settlement proceeds were Diana's separate property. But the language did not actually say that the $750,000 was payment for Diana's physical sickness. The sentence described how the settlement was brought about ("bona fide adversarial negotiations"), what type of case it is ("tort based"), and what the case involved ("Diana Jones' physical sickness"). And the sentence said that the entire settlement was to "resolve" the case—that is, not just the $750,000 payment but all the provisions to which the parties agreed. It did not say that the money was to compensate Diana for her physical sickness.

{¶ 21} In addition, we note that the Joneses' complaint against the county in the civil action did not contain factual allegations of physical injury or sickness. The Joneses alleged claims of sex and gender discrimination, retaliation, infliction of emotional distress, respondeat superior, loss of consortium, breach of contract, and reckless conduct/malice/punitive damages. While the complaint referred to damages for "pain and suffering" and "emotional distress," there were no factual allegations of either physical or emotional injury. And the claim for infliction of emotion distress was dismissed early on as barred by the applicable statute of limitations. The bulk of the damages sought were for Diana's economic losses, as supported by the "Special Damages Report," which was among the subpoenaed documents. The report was written in November 2014 for trial or settlement purposes by an expert retained by the Joneses. It was based on numerous sources (listed in the report), including the complaint, conversations with the Joneses' attorney, conversations and emails with the Joneses, and affidavits of both Jeffrey and Diana. Based on these sources, the expert found total present value losses of $921,726

to $1,606,194. We note that all of the losses included in the calculation were economic. Nowhere did the report refer to losses or damages for physical injury or sickness.

**{¶ 22}** The reason that the Joneses wanted the "physical sickness" language in the settlement agreement was to avoid having to pay income tax on the settlement proceeds. The subpoenaed correspondence shows that the Joneses asked their attorney to consult with the Prosecutor's Office as to how they could "legitimately classify the $750,000 to avoid taxes if possible." (Def. Ex. DDD.) To that end, as we noted earlier, the Joneses asked that neither the settlement agreement nor the payment checks mention or refer to " 'wage(s)' " and asked that the county not issue them a 1099 form. Perhaps most tellingly, federal tax law excludes from taxable income damages received as compensation for "personal physical injuries or physical sickness," 26 U.S.C. 104(a)(2), part of which is the exact term that the Joneses asked the county to include in the settlement agreement. That section also specifically provides "[f]or purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness." Moreover, settlement proceeds for lost wages or unlawful discrimination or involuntary termination of employment, all of which Diana alleged in her lawsuit and for which she provided monetary calculations, were subject to income tax. More importantly, to the extent that the evidence demonstrated that the settlement was for "loss of earnings" as a result of "marital expenses" (attorney fees paid to recover income), the settlement was marital property or marital expenses subject to equitable division.

**{¶ 23}** In sum, despite Diana's insistence that the proceeds were for physical sickness, she presented little evidence—and no medical evidence—supporting this claim. None of the correspondence leading to the settlement mentioned physical sickness or

personal injury. In our prior opinion, we concluded that, "regardless of the language used or the issuance of payment to Diana alone, the evidence in this record could support a finding that Diana and Jeffrey negotiated the language and terms of the settlement agreement to avoid paying income tax on the settlement proceeds and, thus, that the entirety, or some portion, of the settlement was a marital asset subject to equitable division." *Jones*, 2019-Ohio-2355, 138 N.E.3d 634, at ¶ 25. The evidence overwhelming shows that the settlement proceeds were paid to settle Diana and Jeffrey's civil action against the county and to compensate Diana for her economic losses resulting from her claims of employment discrimination. Diana testified at the 2019 remand hearing that, in the settlement negotiations, she disregarded her economic losses and focused simply on her physical sickness. But the evidence shows that the amount was paid for her claimed economic losses plus the other non-physical injury terms listed in the settlement agreement.

{¶ 24} We conclude that Diana failed to rebut the presumption that the settlement proceeds were marital property. The settlement proceeds were a marital asset. As such, the trial court must make an equitable division of the proceeds. The court should be sure to consider Jeffrey's claim that he paid $193,000 in costs and attorney fees before the final settlement was reached. The bulk of this amount, he testified, came from a farming line of credit that he was still paying off.

{¶ 25} The first assignment of error is sustained.

## B. Spousal support

{¶ 26} The second assignment of error alleges:

THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT.

**{¶ 27}** We instructed the trial court on remand to determine, after adjusting the property division, whether to modify, terminate, or retain its current spousal support order. The trial court ordered Jeffrey to pay spousal support of $900 per month for 36 months and retained jurisdiction over spousal support to allow modifications if there were changes in the circumstances of either party. Jeffrey argues that Diana was not entitled to any spousal support.

**{¶ 28}** "Trial courts have broad discretion regarding spousal support orders, and absent an abuse of that discretion, an appellate court will not disturb the trial court's decision." *Jones*, 2019-Ohio-2355, 138 N.E.3d 634, at ¶ 36, citing *Reveal v. Reveal*, 154 Ohio App.3d 758, 2003-Ohio-5335, 798 N.E.2d 1132, ¶ 14 (2d Dist.). But a court's exercise of that discretion is subject to R.C. 3105.18, which directs the court to consider particular factors in making spousal-support determinations. *See* R.C. 3105.18(C)(1).

**{¶ 29}** The trial court here stated in its decision that it had considered all the statutory factors. As to Diana, the court found that she was 54 years old and was unemployed, despite having a degree in civil engineering. The court stated that she had claimed that she was unable to work because she suffered from various mental and physical ailments connected to her prior work experience. Diana said that her source of income was the settlement proceeds and any interest income. When she was last employed, she earned $40,000 annually, and at the time of the hearing, she lived on approximately $37,000 annually. As to Jeffrey, the court found that he was 63 years old and self-employed as a farmer and a business owner. He had no physical or mental health concerns. Although Jeffrey's income varied from year to year, the court found that he was able to maintain his financial obligations of at least $93,000 annually. His businesses had

assets of approximately $1.6 million and liabilities of approximately $1.4 million. The court found that Diana and Jeffrey had been married for over nine years and that, during the marriage, they enjoyed a high standard of living. Their marital home was over 5,000 square feet, and they owned multiple parcels of land in different states. During the marriage, Jeffrey was the primary wage earner. Both had worked for Montgomery County and had retirement accounts.

{¶ 30} An abuse of discretion results in a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Based on the evidence here, we cannot say that the trial court abused its discretion in determining that spousal support was appropriate and reasonable or in its determination of the amount or duration of the support.

{¶ 31} The second assignment of error is overruled.

## C. Timeframe for marital-property payment and the use of a nunc pro tunc entry

{¶ 32} The third assignment of error alleges:

THE TRIAL COURT ERRED IN DETERMINING THE MANNER OF DISTRIBUTION AND PAYMENT OF PROPERTY AND DEBT.

{¶ 33} Jeffrey contends that the trial court erred by ordering him to pay Diana her share of the marital property—over $200,000—within six months. Jeffrey argues that this timeframe was inequitable because he did not have that much cash, few of his assets were liquid, and his real estate was encumbered by debt and co-owned with a third party.

{¶ 34} We have concluded that the settlement proceeds should be divided as marital property, so the amount that Jeffrey owes Diana as her marital share will change.

The payment timeframe can be reevaluated by the trial court after it has equitably divided the settlement proceeds.

{¶ 35} Jeffrey also contends that the trial court erred by entering the new March 4, 2020 final judgment as nunc pro tunc to the original June 26, 2018 judgment. We agree. An erroneous judgment cannot be corrected with a nunc pro tunc entry. "An order issued 'nunc pro tunc'—Latin for 'now for then'—is defined as '[h]aving retroactive legal effect through a court's inherent power.' " *In re E.B.*, 1st Dist. Hamilton No. C-150351, 2016-Ohio-1507, ¶ 9, quoting *Black's Law Dictionary* 1100 (8th Ed.2004). "Such order must reflect 'what the court actually decided, not what the court might or should have decided or what the court intended to decide.' " *Id.*, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995). In other words, "a nunc pro tunc entry may be used to 'reflect what the trial court did decide but recorded improperly.' " *State v. McIntyre*, 2d Dist. Montgomery No. 25502, 2013-Ohio-3281, ¶ 5, quoting *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 15. The new final judgment here makes substantive changes to the division of property and addresses issues that go beyond mere clerical mistakes.

{¶ 36} Because we have concluded that the settlement proceeds should be divided as marital property, further substantive changes will be made to the division of property which will require the trial court to enter another final judgment. For now, pending the equitable division of the settlement proceeds, we have addressed the "nunc pro tunc" elements of the March 4, 2020 final judgment.

{¶ 37} The third assignment of error is sustained.

**III. Conclusion**

{¶ 38} The trial court's judgment is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Jon Paul Rion
Catherine H. Breault
Thomas G. Eagle
Hon. Denise L. Cross