[Cite as *Jones v. Jones*, 2022-Ohio-3074.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

DIANA LYNN JONES :
:
    Plaintiff-Appellee : Appellate Case No. 29439
:
v. : Trial Court Case No. 2016-DR-127
:
JEFFREY T. JONES : (Appeal from Common Pleas
: Court – Domestic Relations Division)
    Defendant-Appellant :
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2022.

. . . . . . . . . . .

CATHERINE H. BREAULT, Atty. Reg. No. 0098433 & JON PAUL RION, Atty. Reg. No. 0067020, 130 West Second Street, Suite 2150, P.O. Box 10126, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

THOMAS G. EAGLE, Atty. Reg. No. 0034492, 3400 North State Route 741, Lebanon, Ohio 45036
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jeffrey T. Jones appeals from a final judgment and decree of divorce issued by the Montgomery County Court of Common Pleas, Domestic Relations Division, on March 14, 2022.   Jeffrey filed a timely notice of appeal on March 16, 2022.

{¶ 2} We set forth the history of the case in *Jones v. Jones*, 2020-Ohio-6851, 165 N.E.3d 379 (2d Dist.) ( "*Jones II*"), and we repeat it herein in pertinent part:

Jeffrey and Diana Jones were married in February 2008. They have no children together.

Both parties used to work for the Montgomery County Engineer's Office. Jeffrey worked there from 1991 until he was fired in 2007. Diana worked in the Engineer's Office from 2002 until she was fired in 2009. Diana believed that she was improperly fired on the basis of her gender and in retaliation for filing discrimination complaints with the County Engineer, the Ohio Civil Rights Commission, and the Equal Employment Opportunity Commission. As a result, in 2013, Diana and Jeffrey filed a civil suit against the Engineer's Office and the County Engineer. The suit sought damages for sex and gender discrimination, retaliation, intentional infliction of emotional distress, loss of consortium, breach of contract, reckless conduct, and malice; it also sought punitive damages. The complaint alleged that Diana had been bypassed for promotions and raises and that she had been subject to gender discrimination. The complaint also alleged that, before

their marriage, Jeffrey was Diana's supervisor, and he was fired in retaliation for his attempt to intercede on her behalf with the County Engineer. The matter was settled in June 2015. The settlement agreement stated that the settlement was the "result of bona fide adversarial negotiations to resolve a tort based case involving Plaintiff, Diana Jones' physical sickness." The agreement further provided that, in exchange for the dismissal of all claims made by both Jeffrey and Diana, the Engineer's Office would pay $750,000 in checks payable to Diana.

In February 2016, Diana filed for divorce. She maintained that the 2015 settlement proceeds were her separate property, but Jeffrey maintained that they were marital. Jeffrey subpoenaed documents related to the settlement from the Engineer's Office and from the Montgomery County Prosecutor's Office (which represented the County Engineer and the Engineer's Office in the action), which he said contained information supporting his claim. The Prosecutor's Office moved to quash the subpoenas, arguing that the documents sought were confidential. The trial court ultimately reviewed the documents in camera and decided not to release any to Jeffrey.

The final divorce hearing was conducted over two days in late 2017 and early 2018. On June 26, 2018, the trial court issued a final judgment and decree of divorce. The court concluded that the settlement proceeds were Diana's separate property, because by statute, "[c]ompensation to a

spouse for the spouse's personal injury" is that spouse's separate property, R.C. 3105.171(A)(6)(a)(vi), and the settlement agreement provided that the payments were made to Diana for her "physical sickness." The trial court also divided the parties' other property, including Jeffrey's interest in two businesses, a farming business and a snow removal/trucking business. Diana's expert valued both businesses combined at $202,477. The court found that the value of the farming business was $110,000 and the value of the snow removal/trucking business was $92,477. The court awarded Diana half of both values ($55,000 and $46,238.50). The court also ordered Jeffrey to pay spousal support of $900 per month for 36 months. [1]

Jeffrey appealed the final judgment and divorce decree, arguing that the trial court erred by failing to release the subpoenaed documents to him, erred in the division of property, and erred by ordering him to pay spousal support. We agreed that the trial court should have permitted Jeffrey to inspect the subpoenaed documents; we also agreed that the trial court erred in its property division. *Jones v. Jones*, 2019-Ohio-2355, 138 N.E.3d 634 (2d Dist.). We first concluded that the court's determination on the settlement proceeds constituted an abuse of discretion. Noting that the trial court's finding that the proceeds were Diana's separate property was based on the language of the settlement agreement, which referred to Diana's

---

[1] There was no temporary order of spousal support while the parties' divorce was pending, and Diana paid her own attorney fees. Furthermore, the record establishes that Jeffrey did not pay Diana any spousal support during the litigation.

"physical sickness," and on the fact that the settlement checks were payable to her, we held that the court should have also considered the other evidence regarding the nature of the proceeds, including the subpoenaed documents and the parties' testimony. *Id*. We then concluded that by denying Jeffrey the right to review the subpoenaed documents, the trial court had wrongly denied him an opportunity to establish the marital nature of the settlement proceeds. As for the division of Jeffrey's businesses, we concluded that the trial court erred by awarding Diana half of the snow removal/trucking business; Jeffrey had acquired that business before the marriage and there was no evidence as to the value of the business at the time of the marriage, so the trial court could not have determined that there was any increase in its value. Lastly, we concluded that, because our decision regarding the property division might [a]ffect * * * the spousal-support determination, the award of spousal support needed to be reconsidered. We reversed and remanded. *Id.*

At the end of October 2019, after having given Jeffrey an opportunity to examine the subpoenaed documents, the trial court held a hearing on the nature of the settlement proceeds. In early February 2020, the trial court issued a judgment in which it again determined that the settlement proceeds were entirely Diana's separate property. The court found that the language of the settlement agreement plainly and unambiguously showed that the settlement proceeds were for Diana's "physical sickness," and the court

refused to consider any other evidence. As for spousal support, the court again awarded Diana $900 per month for 36 months, retaining jurisdiction to make modifications if there were a change in circumstances of either party. On March 4, 2020, the trial court entered a new final judgment and decree of divorce that incorporated its property-division and spousal-support determinations. The court entered the new judgment nunc pro tunc to the original 2018 judgment. The trial court again ordered Jeffrey to pay Diana her share of the marital property within six months of the divorce decree.

*Id.* at ¶ 3-8.

**{¶ 3}** Jeffrey appealed a second time, and we affirmed in part and reversed in part the decision of the trial court. *Jones II*, 2020-Ohio-6851, 165 N.E.3d 379. Specifically, we held that the trial court had failed to consider all the relevant evidence and erred in its determination that proceeds from the civil-action settlement were Diana's separate property. Based on all the evidence, we found that the settlement proceeds were marital property as a matter of law, and we ordered the trial court to "make an equitable division of the proceeds." *Id.* at ¶ 24. We also held that the trial court did not err by awarding spousal support to Diana in the amount of $900 per month for a period of 36 months. Lastly, we held that the trial court erred in entering a new final judgment and decree of divorce nunc pro tunc.

**{¶ 4}** Upon remand, using the date of the final divorce hearing (November 14, 2017) for valuation purposes, the trial court found that only $403,000 was left from the

settlement proceeds out the original sum of $750,000. Decision, September 2, 2021, p. 3. The trial court also found that Diana had not spent the settlement proceeds frivolously. Rather, Diana had been unemployed, and the settlement proceeds had been the only income she had on which to survive. Additionally, the trial court found that some of the proceeds from the settlement had been spent before the parties separated and therefore were not solely utilized by Diana. Therefore, the trial court divided the remaining $403,000 in half and awarded each parties $201,500 "as their equitable share." *Id.* at p. 4. Notably, the trial court did not award Jeffrey attorney's fees for the amounts he purportedly paid before the final settlement was reached in June 2015, finding that the evidence provided by Jeffrey was insufficient "to assess the reasonableness of the fees." *Id.* at p. 5. The trial court also failed to award Jeffrey any interest on his marital portion of the settlement proceeds. On March 14, 2022, the trial court issued a final judgment and decree of divorce incorporating its findings regarding the settlement proceeds from the decision issued on September 2, 2021.

{¶ 5} Jeffrey now appeals from that judgment.

{¶ 6} Because they are interrelated, Jeffrey's first, second and third assignments of error will be discussed together as follows:

> A TRIAL COURT IN A DIVORCE CASE ERRS, AND VIOLATES THE APPELLATE MANDATE TO DIVIDE THE DECIDED $750,000.00 CIVIL SETTLEMENT, BY DIVIDING A DIFFERENT AMOUNT THAN THE PREVIOUSLY LITIGATED AND DECIDED AMOUNT OF THE ASSET, AND/OR BY USING A DIFFERENT "VALUATION" DATE THAN OTHER

ASSETS, BOTH OF WHICH HAD ALREADY BEEN FINALLY DECIDED.

A TRIAL COURT IN A DIVORCE CASE ERRS, ABUSES ITS DISCRETION, FAILS TO DIVIDE A CIVIL SETTLEMENT FUND ACQUIRED BY THE PARTIES IN AN EQUITABLE MANNER, AND DOES SO WITHOUT SUFFICIENT SUPPORT, WHERE THE COURT DIVIDES LESS THAN THE ENTIRE AMOUNT OF THE SETTLEMENT, AND AFTER IT WAS SPENT OR TRANSFERRED BY ONE SPOUSE WHILE A TRO WAS IN EFFECT TO PROHIBIT SPENDING THE MONEY DIVIDED.

A TRIAL COURT IN A DIVORCE CASE ERRS, ABUSES ITS DISCRETION, FAILS TO DIVIDE A CIVIL SETTLEMENT FUND ACQUIRED BY THE PARTIES IN AN EQUITABLE MANNER, AND DOES SO WITHOUT SUFFICIENT SUPPORT, WHERE THE COURT DIVIDES ALL OTHER MARITAL ASSETS ON AN EQUAL BASIS, BY DIVIDING THE SETTLEMENT UNEQUALLY.

**{¶ 7}** In these assignments of error, Jeffrey essentially contends that the trial court erred when it did the following: 1) divided the amount of $403,000 of the settlement proceeds instead of the original amount of $750,000; 2) used the date of the final divorce hearing for valuing the settlement proceeds; 3) failed to "equitably" divide the settlement proceeds as it did with all of the other marital assets at issue in the parties' divorce; and 4) allowed Diana to spend some of the settlement proceeds in violation of temporary restraining orders (TROs) that were in effect without proportionately reducing her final award of said proceeds.

{¶ 8} "Appellate courts review a trial court's division of property under an abuse of discretion standard, but a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence." *Hall v. Hall*, 2d Dist. Greene No. 2013-CA-15, 2013-Ohio-3758, ¶ 12, citing *Mays v. Mays*, 2d Dist. Miami No. 2000-CA-54, 2001 WL 1219345 (Oct. 12, 2001). When considering the evidence's weight, we " 'review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof.' " *Id.*, quoting *Cooper v. Cooper*, 2d Dist. Greene Nos. 2007-CA-76 and 2007-CA-77, 2008-Ohio-4731, ¶ 25.

### Equitable Division of the Settlement Proceeds

{¶ 9} "In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5, citing R.C. 3105.171(C). Under R.C. 3105.171(A)(3)(a), and as relevant here, "marital property" includes:

> (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]

**{¶ 10}** R.C. 3105.171(B) requires that marital property be divided equitably, and an equal division is presumed to be equitable. "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). "Equality" is the "starting point" for dividing any marital assets and debts; however, the court may divide the marital assets and debt in some other fashion if it finds that an equal division would be inequitable. *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852, ¶ 62, citing *Arnett v. Arnett*, 2d Dist. Montgomery No. 20332, 2004-Ohio-5274, ¶ 8; *see also Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F).

**{¶ 11}** Because a trial court must consider the assets and liabilities of both parties, dividing marital property requires the trial court to also divide marital debt. *See* R.C. 3105.171(F)(2). Moreover, a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award. *James v. James*, 101 Ohio App.3d 668, 680, 656 N.E.2d 399 (2d Dist.1995).

**{¶ 12}** "In reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact."

*Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000). An appellate court must give deference to a trial court's findings because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Any issues relating to witness credibility and/or the weight to be given to their testimony are for the trier of fact to determine. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990); *Seasons Coal* at 80. Thus, a judgment that is supported by competent, credible evidence will not be reversed on appeal. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

{¶ 13} Because of its discretion, "[a] trial court has some latitude in the means it uses to determine the value of a marital asset." *Kevdzija v. Kevdzija*, 166 Ohio App.3d 276, 2006-Ohio-1723, 850 N.E.2d 734, ¶ 23 (8th Dist.). "When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method." *James* at 661.

{¶ 14} In *Jones II*, after finding that the settlement proceeds were marital property, we directed the trial court to "make an *equitable* division of the proceeds." *Id.* at ¶ 24. We did not order the trial court to utilize the original amount of $750,000 from the civil settlement when dividing the proceeds, as Jeffrey suggests in his brief. There was no mandate from this Court to use any specific amount as a starting point when dividing the settlement proceeds. Rather, we merely directed the trial court to "equitably" divide the proceeds based upon the evidence submitted by the parties at the final divorce hearing.

*Id.*

{¶ 15} With that in mind, we must now address whether the trial court abused its discretion when it divided the amount of $403,000 of the settlement proceeds instead of the original amount of $750,000, awarding each of the parties $201,500. As previously stated, R.C. 3105.171(A)(3)(a)(i) defines "marital property" to include: "All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." "During the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," except that if the court determines that either of those dates "would be inequitable, the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(a) and (b). Furthermore, if a spouse has engaged in financial misconduct, including dissipation of assets, the court may compensate the offended spouse with a distributive award or a greater share of marital assets. R.C. 3105.171(E)(4).

{¶ 16} In *State v. Hittle*, 181 Ohio App.3d 703, 2009-Ohio-1286, 910 N.E.2d 1042 (2d Dist.), we found that the trial court acted in a fair and equitable fashion when it refused to award the wife funds from the husband's 401k retirement account that he had withdrawn during the pendency of their divorce to pay expenses and bills. At the time he withdrew the funds from his 401k account, the husband was unemployed and had no way to generate income. No evidence was adduced that the husband placed the funds in a personal account or that he attempted to hide the funds from the wife. Therefore,

we ultimately held that because the retirement fund was not property husband "currently owned" on the dates of the final hearing, the court had no statutory duty to divide it.

{¶ 17} Similarly, in *Troutwine v. Troutwine*, 2d Dist. Clark No. 2009-CA-14, 2010-Ohio-994, both parties testified that they had spent funds from their respective personal bank accounts to pay their living expenses following their separation. *Id.* at ¶18. Those funds having been exhausted, we found that they were not marital assets the court could divide because they were not property or an interest therein which either spouse "currently owned." *Id.* Additionally, no misconduct or dissipation of marital assets was found. *Id.* Therefore, we held that the trial court had had no statutory authority to divide the amounts that the parties had spent from their respective bank accounts or to credit either with that amount in dividing the marital property. *Id.* Rather, we concluded that only the amounts remaining in these bank accounts could have been divided as marital property. *Id.*

{¶ 18} Here, the record establishes that Diana had been unemployed since being fired from the Montgomery County Engineer's Office in 2009. The parties received the proceeds from the settlement in June 2015. The parties separated in October 2015, and Diana filed for divorce in January 2016. During this time and throughout the pendency of the divorce, Diana's only source of income came from the settlement proceeds. Evidence was adduced that, by the time the trial began in November 2017, the proceeds from the settlement had been diminished from $750,000 to $403,000. Diana testified that she only spent the settlement proceeds on bills and other necessities. Like in *Hittle* and *Troutwine*, there was no evidence presented regarding misconduct or unlawful

dissipation of the settlement proceeds.   Significantly, there was unrefuted evidence that approximately $75,000 of the settlement proceeds was spent during the parties' marriage before they separated on medical bills and improvements to one of their residences.   An additional $50,000 was placed by Diana in a joint bank account for use by both parties.

{¶ 19} Thus, at the time of trial, approximately $347,000 of the settlement proceeds had been expended and therefore was not "currently owned" and did not exist for purposes of an equitable division of property. *See State v. Keene*, 2d Dist. Montgomery No. 25070, 2012-Ohio-5213, ¶ 20 (a tax refund for the year 2009 that the parties received in 2010 was owned by both of the spouses, but it was not currently owned, having been exhausted to pay bills and purchase a truck that husband was awarded; therefore, the trial court erred when it divided property - the tax refund – that the parties no longer owned).   Here, the trial court correctly found that only the remaining $403,000 was subject to equitable division, and it awarded each party half of that amount.

### Valuation Date for the Settlement Proceeds

{¶ 20} The valuation of the marital estate for purposes of equitable division and support is the duration of the marriage, which is defined by statute.   R.C. 3105.171(A) provides, in relevant part:

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified

in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 21} In *Dorsey v. Dorsey*, 2d Dist. Montgomery No. 27338, 2017-Ohio-5826, we stated the following:

A "domestic relations court may use alternate valuation dates to achieve the equitable distribution of marital assets." *Berger v. Berger*, 1st Dist. Hamilton No. C-030631, 2004-Ohio-5614, ¶ 12, citing R.C. 3105.171(A)(2) and 3105.171(C). (Other citation omitted.) In *Berger*, the court found no abuse of discretion in the use of alternative valuation dates because of the extended course of the litigation. *Id.* (stressing that "[t]he court has broad discretion in determining these dates, and its decision will not be reversed absent an abuse of that discretion"). *See also Heyman v. Heyman*, 10th Dist. Franklin No. 05AP-475, 2006-Ohio-1345, ¶ 32 ("a trial court is permitted to determine and apply different valuation dates, such as the time of permanent separation or the de facto termination of the marriage. Moreover, a court's determination as to when to apply a de facto termination date falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.") * * *

*Id.* at ¶ 84.

{¶ 22} "Equity may occasionally require valuation as of the date of the de facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets." *Berish v. Berish*, 69 Ohio St.2d 318, 320, 432 N.E.2d 183 (1982). "In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties." *Id.* at 321.

{¶ 23} Based upon the record before us, we conclude that the trial court did not err when it employed alternative valuation dates for the parties' marital property. Specifically, the trial court did not err when it utilized the date of the final divorce hearing (November 14, 2017) for valuing the settlement proceeds. Furthermore, the trial court was free to utilize varying valuation dates for the parties' other marital property, including but not limited to the parties' farms, residences, farming equipment, and vehicles. The trial court's use of the hearing date for valuation of the settlement proceeds took into account that the funds had been diminished and only $403,000 remained in the account from the original $750,000 award. As previously stated, some of the proceeds were spent by the parties prior to their separation and eventual divorce, while the proceeds spent solely by Diana were for bills and other necessities of life. We also note that there was no temporary order of spousal support while the parties' divorce was pending, and

Diana paid her own attorney fees. The trial court could have reasonably concluded that Diana had not unlawfully dissipated the settlement proceeds or committed any financial wrongdoing. Even though a TRO against Diana had been in effect since March 8, 2016, ostensibly restricting her use of the settlement proceeds for personal use, the trial court reasonably concluded that Diana's use of the funds was justified. Furthermore, the record is devoid of any evidence that Jeffrey filed any motions, in contempt or otherwise, to enforce the TRO against Diana, even after he became aware that she had spent a portion of the settlement proceeds for living expenses. Thus, we find that the trial court acted equitably and well within its discretion when it utilized the date of the final hearing for valuing the settlement proceeds.

{¶ 24} Jeffrey's first, second, and third assignments of error are overruled.

{¶ 25} Jeffrey's fourth assignment of error is as follows:

A TRIAL COURT IN A DIVORCE CASE ERRS, ABUSES ITS DISCRETION, FAILS TO DIVIDE A CIVIL SETTLEMENT FUND ACQUIRED BY THE PARTIES IN AN EQUITABLE MANNER, AND DOES SO WITHOUT SUFFICIENT SUPPORT, WHERE THE ASSET IS A MONETARY FUND THAT HAS INVESTMENT EARNINGS DURING THE MARRIAGE AND PRIOR TO DIVISION, WITHOUT ALSO DIVIDING THE INVESTMENT EARNINGS ON THE SAME MARITAL ASSET.

{¶ 26} Jeffrey argues that the trial court erred when it failed to award him a portion of the investment earnings or passive income (interest) that Diana received from the

settlement proceeds in her possession. We note, however, that the record contains no evidence establishing that Diana had invested any of the settlement proceeds with brokers or in the stock market. Rather, the evidence presented at trial established that Diana had placed the settlement proceeds in her personal bank account, where it they ostensibly accrued interest during the litigation, in which Jeffrey was entitled to share.

{¶ 27} Diana argues that any claims regarding investment earnings or passive income (interest) that she received from the settlement proceeds is barred by res judicata, because Jeffrey failed to raise the issue in his prior appeals. Upon review, however, we find that he raised the issue of investment earnings from the settlement proceeds, however briefly, in his appellate brief in his first appeal to this Court (Montgomery App. No. 28074, Appellant's Brief, p. 25). Furthermore, regarding property found by the trial court to be a marital asset, any division would necessarily include interest earned thereon. Therefore, res judicata does not bar Jeffrey's claim in this regard.

{¶ 28} R.C. 1343.03(A) provides in pertinent part that:

[W]hen money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out * * * a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 29} In *Dorsey*, 2d Dist. Montgomery No. 27338, 2017-Ohio-5826, we stated:

Courts have held that under R.C. 1343.03, "a party receiving a definite money judgment is entitled to interest at ten percent per year as a matter of law. * * * This right is equally applicable to obligations arising out of a divorce decree." *Rizzen v. Spaman*, 106 Ohio App.3d 95, 111, 665 N.E.2d 283 (6th Dist.1995), citing *Koegel v. Koegel*, 69 Ohio St.2d 355, 432 N.E.2d 206 (1982), syllabus. (Other citation omitted.)

*Id.* at ¶ 95.

**{¶ 30}** Thus, Jeffrey was entitled to any investment earnings accrued over the statutory interest rate on his $201,500 portion of the settlement proceeds after the valuation date utilized by the trial court, November 14, 2017. Jeffrey's fourth assignment of error is therefore sustained. On remand, the trial court shall hold a hearing to determine the investment earnings accrued over the statutory interest rate, if any, on Jeffrey's marital portion of the settlement proceeds, and it shall render judgment regarding any additional amount he is owed, using the valuation date of November 14, 2017, as a starting point for calculations. But if the investment income was less than the amount realized using the statutory interest rate, Jeffrey is instead entitled to interest at the statutory rate starting on November 14, 2017.

**{¶ 31}** Jeffrey's fifth and final assignment of error is as follows:

A TRIAL COURT IN A DIVORCE CASE ERRS, ABUSES ITS DISCRETION, FAILS TO DIVIDE A CIVIL SETTLEMENT FUND ACQUIRED BY THE PARTIES IN AN EQUITABLE MANNER, AND DOES SO WITHOUT SUFFICIENT SUPPORT, WHERE LEGAL FEES AND

COSTS ARE INCURRED AND/OR PAID BY ONE SPOUSE TO GENERATE THE SETTLEMENT OF A CIVIL LAWSUIT THAT IS A MARITAL ASSET, BY NOT DIVIDING THE LEGAL FEES AND COSTS BETWEEN THE SPOUSES AS PART OF OR SEPARATELY FROM THE MARITAL ASSETS.

**{¶ 32}** Jeffrey argues that the trial court erred by not awarding him an additional $193,000 for attorney fees and legal expenses used to fund the civil suit that yielded the settlement proceeds. Specifically, Jeffrey argues that Diana should have to pay half of the attorney fees and expenses from her portion of the settlement proceeds.

**{¶ 33}** In her decision denying Jeffrey an additional amount of proceeds from the settlement for attorney fees, the trial court cited to Montgomery D.R. Rule 4.27(G)(2), which states as follows:

(G) Attorney Fee Hearing Requirements.

* * *

(2) Prior to any attorney fee hearing, both parties shall make a detailed written disclosure of attorney fees incurred, including hourly rates charged, time expended, fees paid, the source of fees paid, amounts due, and additional litigation expenses incurred. In order to minimize each party's litigation expenses and litigation in the court generally, counsel shall apply their own experience and make every good faith effort to reach agreement. If a fee hearing is necessary, the moving party must provide testimony from an expert witness (another attorney with domestic relations experience) as

to the reasonableness of the request, based on Rule 1.5 of the Ohio Rules of Professional Conduct and *Swanson v. Swanson* (1976), 48 Ohio App. 2d 85.

{¶ 34} In Defense Exhibit GG, Jeffrey introduced the following self-prepared list in an effort to document his legal fees and related expenses for the civil settlement:

**Attorney fees/costs summary**

| | |
|---|---|
| **Attorney Fees** | **$197,622.22** |
| **Expenses** | **$3520.31** |
| **Deposition** | **TBA [$]2000+** |
| **Bogumil** | **$7000+** |
| **(forensic psychologist)** | |
| **Forensic Psy Cincinnati** | **$5000 (?)** |
| **Forensic Psy Dayton** | **$2500 (?)** |

**217,000**

**-24,000**

**193,000**

{¶ 35} Other than his "Attorney fees/costs summary," Jeffrey submitted no other documentation establishing the actual costs of the legal fees. As shown above, Jeffrey's summary contains question marks, estimates of certain costs, and a "TBA." Jeffrey failed to submit any invoices, canceled checks, or credit card statements as proof of payment to his attorney for fees and costs associated with securing the settlement

proceeds. We agree with the trial court that Jeffrey submitted insufficient documentation for the trial court to adequately determine the reasonableness of the fees and costs he claimed.

**{¶ 36}** Additionally, at the final divorce hearing, evidence was presented that Jeffrey's attorney had been paid in full using Jeffrey's earned income and a farming line of credit. Furthermore, it is unrefuted that Jeffrey's attorney was paid before the settlement proceeds were received by Diana and while the parties were still married. Jeffrey provided no documentation or other evidence regarding how much of the legal fees were paid from his earned income or from the line of credit. Jeffrey's earned income generated during the parties' marriage was clearly marital property. The trial court also factored Jeffrey's farming line of credit into the value of the parties' farming business, which reduced the value of the business and resulted in a loss of equity for both Jeffrey and Diana. Pursuant to the divorce decree, Diana was awarded $55,000 for her interest in the farming business. This amount was offset by the farming line of credit, which was partially used to pay for the legal fees. Thus, both parties essentially "paid" for the attorney fees and costs through a reduced marital-equity valuation of their farming business. Because both parties paid for the legal fees associated with procuring the settlement proceeds using Jeffrey's marital earned income and the marital farming line of credit, he was not entitled to an award of attorney fees from Diana's portion of the settlement proceeds.

**{¶ 37}** Jeffrey's fifth assignment of error is overruled.

**{¶ 38}** In light of the foregoing, the judgment of the trial court is affirmed in part and

reversed in part. The matter is remanded to the trial court for a hearing to determine whether investment earnings on the settlement proceeds, if any, exceeded the statutory interest rate; the court will then render judgment based on either the investment earnings or the statutory interest rate attributable to Jeffrey's marital portion of the settlement proceeds.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Catherine H. Breault
Jon Paul Rion
Thomas G. Eagle
Hon. Denise L. Cross